MARTIN *v.* HARWELL, and *vice versa.*

1. This case is controlled by the questions made in the cross-bill of exceptions ; and the judgment thereon being reversed, the writ of error on the main bill of exceptions is dismissed.
2. Section 3542 of the Civil Code does not apply to a sale of timber growing upon land, when there is no deficiency in the quantity of the land, but only misrepresentation as to the quantity and character of the timber itself.
3. Such misrepresentation affords no ground for defeating an action for the agreed price of the timber, when the purchaser had sufficient opportunity to inspect the same, was not prevented by the seller's fraud from so doing, and voluntarily chose to rely on his statements without making the necessary examination to ascertain the truth.

Submitted March 1, — Decided April 2, 1902.

Complaint. Before Judge Nottingham. City court of Macon. May 20, 1901.

*Hall & Wimberly* and *Steed & Ryals*, for Martin, cited, as to apportionment of price on account of deficiency : Civil Code, § 3542; 82 *Ga.* 793 (1) ; 94 *Ga.* 353; 98 *Ga.* 388; 37 N. W. 497; 27 N. E. 691; 90 Tenn. 729, s. c. 18 S. W. 398 ; 43 N. W. 800; 57 N. W. 808; 44 *Ga.* 237; 91 *Ga.* 600, 605; 13 S. E. 457; 85 Me. 362, s. c. 27 Atl. 253; 4 Mason, 414; 16 N. J. Eq. 290; 1 Md. 147; 1 Sugd. Vendors (Perkins' ed.), § 3, p. 489 ; 15 Am. & Eng. Enc. L. (1st ed.) 718.   As to misrepresentations: 91 *Ga.* 600; 94 *Ga.* 113; Id. 183; 45 *Ga.* 13; 5 S. E. 374; 55 N. E. 427; 43 N. W. 803; 11 S. E. 218; 27 Pac. 73; 25 N. E. 600; 20 S. W. 958; 58 Pac. 1009; 75 N. W. 161; 84 *Ga.* 497; 103 *Ga.* 314, 316; 84 N. W. 285;  69 N. W. 722;  58 N. W. 453;  48 Pac. 37; 75 *Ga.* 684; 94 *Ga.* 183; 95 *Ga.* 229; 60 N. W. 389; 27 Atl. 253; 12 S. E. 397; 37 N. W. 497; 18 S. W. 398; 27 N. E. 691; 43 N. W. 800.

*Lane & Park,* contra, cited Civil Code, §§ 3984, 3985;  30 *Ga.* 61; 54 *Ga.* 513; 69 *Ga.* 507 (5a); 80 *Ga.* 395; 86 *Ga.* 1; 19 *Ga.* 448; 20 *Ga.* 242; 26 *Ga.* 362; 53 *Ga.* 600; 75 *Ga.* 565; 59 *Ga.* 851, 854; 50 *Ga.* 618; 91 *Ga.* 600, 606–7; 98 *Ga.* 388; 75 *Ga.* 606.

LUMPKIN, P. J.   This was an action by Harwell against Martin upon a promissory note for $1,000.   The defendant's original answer in effect admitted a prima facie case for the plaintiff.   In addition to this answer the defendant also filed what may be termed four special pleas.   Two of these, the 1st and 2d, were stricken on demurrer, and of this he did not complain.   He also offered an amendment to his answer, which the court refused to allow, and of this he did complain.   It was in substance the same as the 4th special plea, the nature of which will hereinafter more fully appear. At the close of the testimony the court directed a verdict for the plaintiff Harwell, and the defendant Martin brought the case here for review.   Harwell, by a cross-bill of exceptions, assigns error upon the refusal of the court to sustain his demurrer to the 3d and 4th special pleas referred to above.

1. In our judgment these pleas ought to have been stricken ; and this being so, there was, of course, no error in refusing to allow the amendment to the answer, which was, as already stated, in substance the same as the 4th special plea.   If this plea was not good, it necessarily follows that the proposed amendment was properly rejected.   It accordingly results that this case is controlled by the

questions made in the cross-bill of exceptions; for, with the special defense upon which the defendant relied out of the way, a verdict for the plaintiff was inevitable.   We therefore confine ourselves to the questions just mentioned.   See *Andrews* v. *Kinsel*, 114 *Ga.* 390.

2.  The following is the defense set up by the 3d special plea: On February 2, 1900, T. E. Williams and W. J. Rogers sold and conveyed to the defendant Martin, P. B. Todd, and A. Causey the timber on certain described lands in Berrien county, including "all pine timber 14 inches in diameter 14 inches above the ground, suitable for sawmill purposes, growing upon lots Nos. 414 and 415 in the ninth district, and lots 414 and 415 in the tenth district, in said Berrien county, containing 1,200 acres more or less."   The consideration of this sale, as stated in the contract evidencing the same, was $8,000.   This sum was in fact paid to the owners of the timber.   On the same day Harwell sold and conveyed to the above-named purchasers his interest in the timber described in that contract, he having, under an option given him by the owners, effectuated for them the sale of the timber to those purchasers.   The price to be paid Harwell was $2,000, "the same representing his profit in the transaction."   The note sued on was given to Harwell by Martin for his part of the indebtedness thus created.   Todd and Causey gave to Harwell their promissory notes for the balance of the $2,000.   All of the timber so purchased was at an agreed valuation of $3.10 per acre.   "The timber in the last-mentioned tract did not amount to twelve hundred acres, and said tract of timber did not contain said twelve hundred acres, the quantity specified, but on the contrary contained only 358.7 acres according to actual survey, and the deficiency in the quantity of acres contained in said tract of timber is, and was, 841.3 acres, which at three dollars and ten cents per acre amounts, at the agreed valuation and purchase-price, to the sum of two thousand, six hundred, and eight dollars and three cents.   This defendant shows that the deficiency was so gross as to justify suspicion of wilful deception, and that it was in law fraudulent and a breach of contract to sell and convey said tract of 358.7 acres of timber as a tract containing twelve hundred acres, more or less, of timber; wherefore this defendant prays for an apportionment of the price of the relative value represented by said deficiency, and defendant prays that the present suit pend-

ing against him, and the suit brought by the said Harwell against the said Todd and Causey, respectively, and the other two notes given as part consideration of the purchase of said timber, may be consolidated and tried as one case; and this defendant prays that the said sum of two thousand, six hundred, and eight dollars and three cents, in which the said Harwell is indebted to this defendant and the said Todd and Causey, may be recouped and set off against the demand of the said Harwell, and that judgment may be rendered in his and their behalf for the overplus."

It is evident that the plea with which we are now dealing was framed upon the idea that section 3542 of the Civil Code was applicable to the facts set up by the plea. In this view we are unable to concur. That section deals with sales of land, and can not be invoked in a case like the present, where there was a sale of all the timber of a given description growing upon a designated tract of land. This plea taken by itself — and certainly when read in the light of the allegations embraced in the next plea — does not allege that there was any deficiency in the quantity of the land upon which stood the purchased timber, but alleges that a considerable portion of this land was not timbered as represented. The section cited declares that when there is a sale of land "by the tract or entire body, a deficiency in the quantity can not be apportioned." If, however, in stating the quantity, the qualifying words "more or less" are used, there may be an apportionment in price where the deficiency is so gross as to justify the suspicion of wilful deception or mistake amounting to fraud. These statutory provisions are so clearly inapplicable to a case like the present that we do not deem it essential to further discuss this point, and are entirely satisfied with our conclusion that the court erred in not sustaining the demurrer to this particular plea. It was also insufficient in law, for the same reasons as those we will set forth in dealing with the 4th special plea.

3. In it the following facts were alleged as a defense to the plaintiff's action: The plaintiff, C. A. Harwell, "in the said sale of timber, defrauded and damaged this defendant by fraudulent and false statements and fraudulent conduct as follows, namely: In the purchase of said timber said P. D. Todd, A. E. Causey, and E. L. Martin were represented by the said A. E. Causey, who acted for them and reported to them the negotiations and representations

made by the said C. A. Harwell for the purpose of selling said timber. The said C. A. Harwell, for the purpose of selling said timber to the said Causey, represented to the said Causey, prior to said sale, that the tract of timber last mentioned . . contained twelve hundred acres of timber; whereas in truth and in fact said tract contained only 358.7 acres of timber, and the said statement of the said Harwell to the said Causey was false and fraudulent, and the said Causey believed, relied upon, and trusted in the said Harwell, and believed the said statement to be true, and, so believing, reported the same to his associates, the said Todd and Martin; and the said Todd, Causey, and Martin entered into said purchase, and agreed and stipulated to pay said purchase-price of ten thousand dollars relying upon the said statement, which said statement was false and fraudulent. And this defendant further shows that, two days before the trade was consummated, the said A. E. Causey, in behalf of himself and associates, Todd and Martin, went down to Berrien county, at the solicitation of the said C. A. Harwell, who had offered to sell the timber to said Causey, and was met by Harwell and Rogers, who undertook to show him the different tracts of timber embraced in the proposed sale." The said Harwell and Rogers showed to the said Causey, with a single exception, all the tracts of land the timber upon which they were endeavoring to sell to the defendant and his two associates. After so doing, Harwell and Rogers carried Causey " to the tract of timber represented to contain twelve hundred acres, . . which last-mentioned tract of timber was reached by the said Causey after sundown. They carried him to the last-mentioned tract of timber from the west side, along the public road leading in the direction of Nashville, and carried him some distance therein, showing him some good timber, and representing to him that the timber in which he then was was a fair average of the twelve hundred acres of timber which it was represented said tract contained. Relying upon the truth of said representation that the rest of the alleged twelve hundred acres was equal to the timber which he was then in, and it having become too dark to proceed further, and having no reason to suspect the untruthfulness of said representation, and it being necessary for him to return to Macon that night, and it being alleged that the option thereon expired two days thereafter, and the said Rogers having emphatically refused to extend the time of closing

said option, and it being necessary to trade without further opportunity to inspect the said timber, the said Causey and his associates, Todd and Martin, to whom he reported, accepted said representation as true and relied upon it, and did not further investigate and examine said timber, and, so relying upon the truth thereof, they entered into the said contract and paid the purchase-price of eight thousand dollars aforesaid, and made and delivered the three aforesaid notes, aggregating two thousand dollars as aforesaid, making the total purchase-price ten thousand dollars, in faith and in the belief that the said representations were true, and that the said tract in truth and in fact contained twelve hundred acres of timber, as was so represented to them, and equal to the portion of the said timber which the said Causey saw. Yet said representation was false and fraudulent, and in truth and fact said tract contained only 358.7 acres of such timber, and not twelve hundred acres as was represented to the said Causey, and by him reported to his associates; by reason whereof this defendant and the said Todd and Causey have been defrauded, injured, and damaged in the sum of two thousand, six hundred, and eight dollars and three cents, which sum he prays may be recouped and set off against the sum of money sued for; and they pray that the aforesaid action, as well as the action pending in the city court of Macon in behalf of the said Harwell against the said Todd and Causey, may be consolidated and tried as one case, and that judgment may be rendered therein, as is just and according to law and in equity and good conscience."

From the allegations of this plea it will appear that the defendant chose to rely upon the representations made by Harwell and Rogers respecting the quantity and character of the timber upon the tract of land containing twelve hundred acres. It is alleged that these representations were false and fraudulent, and that defendant was injured by relying and acting upon the same. The defect in the plea is that it did not disclose any emergency or condition authorizing the defendant to rely upon those representations without making for himself an examination of the premises. If he had a reasonable opportunity to do this and failed to avail himself thereof, he is not, from a legal standpoint, entitled to complain of the deception which he alleges was practiced upon him. The allegations of the plea do not sufficiently show either that the de-

fendant had no such opportunity, or that he was by the fraud or deceit of Harwell or Rogers prevented from thoroughly examining the timber upon the twelve hundred acres. The plea does allege that defendant was informed that the option under which Harwell was negotiating would expire within two days, and that Rogers emphatically refused to extend the time of closing the option, but it will be noticed there is in the plea no averment that in point of fact the option would not have expired within the limited time mentioned. In the proposed amendment to the answer, which was rejected, the defendant expressly alleged that he had no knowledge "as to the truthfulness or untruthfulness" of the representation "as to expiration of option." The plea now under consideration was silent on this point; but in the absence of an averment that this representation was false, we are clear that the plea was without merit. Had it declared that the statement that the option would expire in two days was false, then the defendant and his associates would have occupied the position of having been forced, by the fraud of Harwell and Rogers, to immediately decide whether or not they would purchase the timber or abandon the negotiations. There being no allegation that this statement was false, then, for aught that appears from the plea, the time for Martin and his associates to examine the land was not limited by such an emergency as they would have been led to believe existed, had they been deceived by untruthful information as to the real expiration of the option. The case then must be dealt with just as if no statement with respect to the expiration of the option had been made at all. It resolves itself simply into a transaction where the purchasers voluntarily chose to rely upon the representations as to the quantity of the timber, when they were not at all bound to do so. If the period covered by the option did in fact extend to a later day than that represented to Causey, he, Martin, and Todd were not deprived of opportunity for full examination. If the option did expire as represented, they were not compelled to purchase at all, but might have declined to do so on the ground that, as they did not have sufficient time to examine the premises, they would not purchase in sole reliance upon the statements made by Harwell and Rogers.

This court has in a number of cases, some of them of early date, held that a purchaser of land could not defeat an action for the price thereof on the ground that he had been deceived by false and fraudu-

lent representations respecting the same on the part of the seller, when it appeared that the purchaser had sufficient opportunity to examine the premises and was not deterred or prevented from so doing by the seller's fault, and yet failed to make the necessary examination. In *Tindall* v. *Harkinson*, 19 *Ga.* 448, this court held that "A contract for the sale of land will not be vitiated by a mere false assertion of the vendor as to the quality and value thereof, where the buyer has full opportunity of forming a correct judgment, and is not prevented by the artifice of the seller from making the necessary examination." See, in this connection, *Castleberry* v. *Scandrett*, 20 *Ga.* 242, which was a case involving a sale of a stock of goods, and *Payne* v. *Smith*, Id. 654, in which the subject-matter of the sale was a tract of land. This court in the case of *Collier* v. *Harkness*, 26 *Ga.* 362, held that "A contract for the sale of land will not be set aside by the mere false assertion of the vendor as to the productiveness of the property, especially where no rescission has been applied for." Another case considerably in point is that of *Allen* v. *Gibson*, 53 *Ga.* 600, in which the rule is laid down, "That a defendant paid too much for the land is no defense to notes given for the purchase-money, where he had opportunity of examination, even though he acted upon the representations of the plaintiff and another." In *Stone* v. *Moore*, 75 *Ga.* 565, it appeared that Moore had bought from Stone certain land and sought to defeat an action upon a promissory note given for the purchase-money thereof, on the ground, among others, that the plaintiff had falsely represented "that the land was fertile, and had a good spring on it, and was covered with hickory timber." The plea was stricken on demurrer, there being no allegation that the purchaser was deprived by the fraudulent acts or conduct of the vendor of the opportunity of inspecting the land. Said Mr. Justice Blandford: "When the consideration of a contract is for land, the purchaser contracts with his eyes open, and if he is not in some way deprived of the opportunity of inspecting the land for himself by the fraudulent acts or conduct of the vendor, he will not be heard to complain; such things as the soil growth or springs on the land are open to inspection, and he is wilfully negligent if he fail to look and see for himself; it is his fault and negligence, and he can not be heard, either at law or in equity, to complain of the conduct of the other party, the effects of which could have been averted

by slight diligence on his part." The case of *Fuller* v. *Buice,* 80 *Ga.* 395, is also in line with those above cited. In *Thompson* v. *Boyce,* 84 *Ga.* 497, the rule stated at the beginning of this discussion was again recognized as correct. Under the particular facts of that case the court held that the seller of the land did, by a fraudulent artifice, prevent the purchaser of the land from examining it in person, but it nevertheless reasserted the principle announced above. It was again recognized in *Fenley* v. *Moody,* 104 *Ga.* 790. The foregoing list is by no means exhaustive of our cases bearing upon the subject in hand, but they are certainly sufficient to support the proposition that the courts will not protect one from the consequences of a fraud where in the exercise of ordinary diligence he might easily have detected it.

*Judgment on cross-bill of exceptions reversed; writ of error on main bill of exceptions dismissed. All the Justices concurring, except Little and Lewis, JJ., absent.*