## DUNCAN *et al. v.* BAILEY.

ATKINSON, J. 1. In a suit for rescission, injunction, cancellation, and damages, the plaintiff, referring to a conversation between himself and one of the defendants after the controversy arose, testified: "He [Mr. Duncan] said it was impossible; he couldn't deliver the property because it wasn't his to deliver. He admitted that there was a mistake about the land he had shown me, and was willing to adjust it on some terms, come to some agreement. He satisfied me that he would, but he never did. Part of the adjustment was that he was to pay Dupree for the timber." On cross-examination the defendant above referred to was required, over objection, to make answer to a question which elicited the following testimony: "I think it is true that Mr. Bailey offered to pay me in cash every one of the notes if I would deliver the property that had been shown to him, but he knew Dupree wouldn't do anything. Dupree had stated in our presence that he would not sell it at any price." The testimony of both witnesses was admitted over the objection that the statements by the defendant were made with a view of compromise. *Held*, that the admission of this testimony was erroneous. Civil Code (1910), § 5781; *Emery v. Atlanta Real Estate Exchange*, 88 *Ga.* 321 (3) (14 S. E. 556); *Georgia Railway & Electric Co. v. Wallace*, 122 *Ga.* 547 (50 S. E. 478).

2. A witness for the plaintiff was permitted to testify, over the objection that it was irrelevant: "I told Judge Edwards that before there was ever any negotiations with Bailey at all, I went there with another prospective purchaser. Mr. Morris then pointed out the line to me, the line by the still site, the line he subsequently showed me when we sold to Bailey." *Held*, that it was erroneous to admit this testimony.

3. The court charged: "Now I charge you, gentlemen of the jury, that if the defendants in this case represented the line to be as the plaintiff contends, if they showed him a corner and pointed out and called the objects at the other end of the line near which the line run, and the line thus represented included the land in question—that is, the land which

---

Evidence, 22 C. J. p. 308, n. 76; p. 310, n. 77; p. 750, n. 80.

Trial, 38 Cyc. p. 1598, n, 22; p. 1602, n. 58; p. 1623, n. 49; p. 1633, n. 12; p. 1634, n. 15; p. 1651, n. 78 New; p. 1653, n. 11 New; p. 1707, n. 98.

Vendor and Purchaser, 39 Cyc. p. 1260, n. 29; p. 1261, n. 32; p. 1266, n. 53; p. 1282, n. 64, 65; p. 1286, n. 94.

is now known not to have belonged to the place purchased, the seventy acres, or whatever it is,—if that was included by the lines represented, if such line was represented by the defendants or their authorized agents to be a part of the place purchased and the defendant [plaintiff?] acted upon that representation in making the purchase and was so deceived by the representations made, if such representations were made and that was the inducement of the plaintiff to purchase the place, if the land thus represented to belong to it was the inducement, if you believe that to be true, and he acted upon that representation and was defrauded and it was fraudulently made, or whether it was made with knowledge of the defendants or not, if they made it even in good faith and it was acted upon by the defendant [plaintiff] and he made the purchase upon such representations and was injured and damaged thereby, then I charge you that would be ground for a cancellation of the trade, and the plaintiff would be entitled to recover whatever necessary expenses he incurred in undertaking to carry out the contract." The charge was not erroneous, as contended, on the grounds: (a) "The court . . limited the jury in their consideration of the case to two questions only, viz., (1) was the representations as to where the line would run the inducement to purchase, and (2) was the purchaser damaged thereby? And did not submit to the jury the question of good faith and intention to deceive on the part of the defendants; nor did the same submit to the jury the question of whether or not the alleged representations were misrepresentations of a material fact, made wilfully to deceive, or recklessly made without knowledge of their falsity, on the part of the seller, with intent to deceive, which is exclusively a question for determination by the jury and should have been submitted to the jury in connection with the other questions or issues to be determined by them." (b) "The express statement of the court . . that if misrepresentations were made by the defendants or their authorized agents as to where the line would run, even in good faith, and the purchaser acted upon the same, he would be entitled to recover, is erroneous and not a correct statement of the law as applicable to the case on trial, or even as an abstract principle of law. In all cases of this character it is a question to be determined by the jury as to whether or not wilful misrepresentations of a material [fact?] had been made by the seller, in order to induce the purchaser to act, and upon which he does act to his injury. In all such cases knowledge on the part of the seller is an essential element to be determined by the jury." (c) "The court, . . intimated or expressed an opinion to the jury as to what had been proven in the case, to wit: 'If the land thus represented to belong to it was the inducement, if you believe that to be true, and he acted upon that representation,' etc. Thus intimating or expressing an opinion to the jury that it had been represented by the defendants that 'the seventy acres or whatever it is' was in the tract sold and that a representation had been made." (d) "The statement of the court, that 'if such line was represented by the defendants or their authorized agents to be a part of the place purchased,' without instructing the jury in connection therewith, or elsewhere in said charge, that the burden would be on the plaintiff to show that the agent or agents alleged to have made the representations were acting within the scope of their authority, was

erroneous, and particularly harmful to defendants, for the reason that the entire case of the plaintiff was based on allegations of misrepresentations made by a named person as agent of the defendants."

4. The court charged: "It is not a question of where the real line was. It is a question of where the line was represented to be." This part of the charge was erroneous on the ground that it intimated the opinion of the judge that the defendants had represented to the plaintiff where the line was located. There was an issue under the pleadings and evidence as to whether the defendants, by themselves or by their authorized agents, had made a representation as to the location of the line.

5. The court charged: "Or whether it [representation as to line] was made with the knowledge of the defendants or not, if they made it even in good faith and it was acted upon by the plaintiff, and he made the purchase upon such representations and was injured and damaged thereby, then I charge you that would be ground for cancellation of the trade." This charge was not erroneous on the ground "that in all cases of this character intent to deceive and knowledge of the falsity of the representations is an essential element necessary to be established, before any right to recovery is shown."

6. The court charged: "If the [defendants] named anybody as agent to point out the line, they would be bound by that line pointed out, just as though they had pointed out the line themselves in person. If the [they?] named some one to point out the line and [the?] person pointed out a line, and it was not the real line, as I have charged you already, if the plaintiff purchased this land on the faith and honest belief that he was purchasing it, and that was the inducement to make the trade, as the plaintiff contends, and then it developed that that was not part of the land and he acted upon it, and they would be bound by it even though they were mistaken and their agent were mistaken as to where the line was." This charge was substantially correct, and was authorized by the evidence.

7. The court charged: "If you rescind the contract, he [the plaintiff] would be entitled to recover the money he paid on the purchase-price, whatever amount seems to have been paid on the purchase-price. He would be entitled to recover any necessary expenses that he incurred in an effort to carry out his contract; and you will determine what they were, from the testimony in the case, and what amount." It was not a good criticism upon this portion of the charge that the court did not, in connection therewith or elsewhere, charge that the plaintiff should account to the defendants for the timber cut from the land rightfully in their possession.

8. There was no error in omitting to charge the jury as follows: "Wilful misrepresentations of a material fact to induce another to act, and upon which he does act to his injury, will give a right of action. In all cases of this character, knowledge of the falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false if intended to deceive, is equivalent to a knowledge of the falsehood." Such instruction would require moral fraud as a basis of a right to recover; whereas the plaintiff would be entitled to relief for mere legal fraud.

9. It was not erroneous to refuse a request to charge: "The burden is on

the plaintiff to show that the defendants, or some one authorized by them, made the representations alleged, fraudulently, and that the plaintiff acted on them to his injury." The request was not perfect, on account of the use of the word "fraudulently," which might have been understood by the jury to include both moral and legal fraud.

10. It was not erroneous to refuse a request to charge: "If Morris was simply a broker to find a purchaser able and willing to take the property at the price named, and had no authority to make representations as to the boundary of the tract offered for sale, then his statements to plaintiff about where the lines were, if he made such statements, would not bind the defendants," as the request ignored all reference to the subject of ratification by the defendants, and the effect of ratification of the acts of Morris by making the bond for title direct to the plaintiff.

11. It was not erroneous to refuse a request to charge: "If the purchaser had equal opportunity, with the seller, for discovering the dimensions of the tract, or its boundary, and a mistake was made as to the direction in which a boundary line would run, and both parties acted in good faith, the purchaser is bound to avail himself of such opportunity. If you find from the evidence that Bailey had equal opportunity with defendants' agent Morris, if he was such agent, for ascertaining the boundary line of the Teal tract, and Morris acted in good faith, the plaintiff can not recover, even though a mistake was made by both parties as to the direction in which a line would run from a given corner." *Folsom* v. *Howell*, 94 *Ga.* 112 (2) (21 S. E. 136); *Estes* v. *Odom*, 91 *Ga.* 600 (4) (18 S. E. 355); *McCrary* v. *Pritchard*, 119 *Ga.* 876 (47 S. E. 341).

*Judgment reversed. All the Justices concur, except Gilbert and Hines, JJ., dissenting.*

No. 4998. JUNE 29, 1926.

Equitable petition. Before Judge Irwin. Douglas superior court. June 24, 1925.

I. S. Bailey, of Monroe County, instituted an action against N. B. and J. T. Duncan, in the superior court of Douglas County, for rescission and damages. The petition as amended alleged that the petitioner had purchased from the defendants described lands and a certain sawmill and engine at the price of $6000; that of such price he paid $1000 in cash and gave five promissory notes for $1000 each for the balance, and received a bond for title from the vendors; that when the purchase was made the petitioner did not know the location of the lines of the land, but the defendants and their agents undertook to point out the lines, and in doing so pointed out a line to the petitioner which would make the purchase include about 75 acres of the land of Dupree, who was an adjacent proprietor; that the 75 acres so included in the Dupree lands was choice land and well timbered, being more valuable than any portion of the timber included in the purchase, and was the

chief inducement to petitioner to enter into the contract of purchase; that after the petitioner had conducted his sawmill for a time on the land described in the bond for title, he moved his mill-site upon the 75 acres above mentioned and commenced cutting and sawing the timber thereon; that shortly afterwards it was ascertained that the line pointed out to petitioner was a false line, and that the 75 acres above mentioned was on the land of Dupree and not on the lands described in the bond for title; that petitioner was compelled to pay damages to Dupree and also to lose the 75 acres and the timber thereon; that shortly after the discovery of the mistake the petitioner repudiated the contract of purchase and sought a rescission; and that one of the notes had been transferred to an innocent holder, which the petitioner would be required to pay. The petition prayed for cancellation of the other notes, for injunction to prevent their transfer to innocent holders, and for damages.

The defendants answered, admitting execution of the bond for title and receipt of the notes and cash payment of $1000. They denied that they or any person authorized by them to do so had pointed out to petitioner the alleged line which would make the sale include the 75 acres of the Dupree place. They alleged that they did not know the lines; that petitioner was afforded ample opportunity to ascertain the lines, and it was his duty to do so before making purchase; that prior to execution of the bond for title the defendants had recently acquired the land and had granted an option to Morris and Sayer, real-estate brokers of Douglas County, and Morris and Sayer had come into communication with Brent, a real-estate broker of Monroe County; that the sale was made by them to the petitioner at $6000; that finally the sale was consummated by the defendants directly to the petitioner with the understanding that the $2000 in excess of the $4000 coming to the defendants was to be paid to the brokers; that the transaction was concluded directly between the defendants and the petitioner, so as to show a purchase at $6000, for the convenience of the brokers, with the understanding that they should receive the last two notes and that they should have the benefit of the security afforded by the bond for title; that the two notes had been delivered to the brokers; and that the defendants retained possession of the remaining three notes. It was prayed that the defendants

have judgment against the petitioner for the principal and the interest due upon the notes. On the trial there was evidence tending to support the above-stated contentions of the respective parties; and though controverted, there was evidence tending to show that at the time of the negotiations the petitioner was informed by the defendants that they did not know the location of the lines, and that they offered to pay half of the expense of surveying the lines, and petitioner did not accept the offer. The jury returned a verdict finding that the trade be rescinded, and that the defendants should pay the plaintiff $1000 and return four of the notes. The defendants' motion for a new trial was overruled, and they excepted.

*Price Edwards, J. H. McLarty,* and *Astor Merritt,* for plaintiffs in error.

*Willingham & Willingham* and *J. R. Hutcheson,* contra.