PUCKETT *et al. v.* REESE.

No. 16159.   MAY 17, 1948.

W. L. Nix, John C. Houston, and A. G. Liles, for plaintiffs in error.

Marvin A. Allison and Charles C. Pittard, contra.

BELL, Justice. ■ The only contentions made by the defendants (now plaintiffs in error) under their demurrer are in relation to the requirement as to restoration or doing equity as a condition to the relief of rescission.

"A contract may be rescinded at the instance of the party defrauded; but in order to rescind he must promptly, upon discovery of the fraud, restore or offer to restore to the other whatever he has received by virtue of the contract, if it be of any value." Code, § 20-906. "One who seeks rescission . . on the ground of fraud must restore, or offer to restore, the consideration received thereunder, as a condition precedent to bringing the action; and a petition which fails to allege restoration or offer to restore before institution of the suit is demurrable." Williams v. Fouché, 157 Ga. 227 (121 S. E. 217). "While a contract may be rescinded for fraud, the party defrauded must exercise ordinary diligence to discover the fraud, and thereupon promptly announce a decision to rescind, and restore or tender the benefits received under the contract. Such a contract may be ratified, and when so ratified the fraud is waived and the contract cannot be rescinded. In a suit to rescind, the petition must show that there has been a restoration or an offer to restore the benefits received under the contract." Manning v. Wills, 193 Ga. 82 (3) (17 S. E. 2d, 261). These and other authorities are relied on for the contention that the petition did not show that the plaintiff had restored or offered to restore the benefits that she had received under the contract, in that she had not tendered back or offered to tender back the land that she had received from the defendants, nor did she pay or offer to pay the note for $2600 which she had given to them as part of the purchase-money, and which they in turn had transferred or endorsed to The Brand Banking Company. It is insisted, in effect, that she should have paid this note and should have obtained a cancellation of the security deed which the defendants had also transferred to the bank, so as to

place the unincumbered title back in the defendants just as it was before they sold the land to her. The defendants further insist that as a matter of fact the plaintiff by her own voluntary act in executing the security deed placed the legal title in the bank as security for the unpaid balance of the purchase-money, and that in so doing she put it without her power to reconvey the land to the defendants free and clear of liens just as she received it from them. Compare *Thomason* v. *Pickett*, 134 *Ga.* 107 (67 S. E. 433).

There is no merit in any of these contentions. The petition does not show that the plaintiff had anything whatever to do with the transaction between the defendants and the bank, but alleges simply that she paid the defendants $1000 in cash and executed a note payable to them for $2600, together with a loan deed to secure the same; and that the defendants themselves transferred and assigned said note and loan deed to The Brand Banking Company. According to her allegations, she made no contract whatever with the bank, although the bank did acquire from the defendants the note for $2600 together with the security. The plaintiff having received a warranty deed from the defendants and having executed back to them the note and security deed, all in one and the same transaction, obtained only an equity in the land, together with the right of possession, and no other benefit was received by her in virtue of the contract. Code § 20-906 requires only that, in order to rescind, the party seeking such relief must promptly restore or offer to restore to the other "whatever he has received by virtue of the contract, if it be of any value." Paragraph 10 of the petition alleged that, immediately upon discovery of the alleged fraud, the plaintiff notified the defendants of her intention to rescind the sale and offered to execute such conveyance as might be necessary to reconvey the property to the defendants, and she now stands ready to do whatever is necessary to restore said land as conveyed. These allegations show an offer to restore all that she had *received* under the contract, and were sufficient to meet the requirements of equity as to restoration. See also, in this connection, Code, § 37-104. If the defendants had not themselves transferred the note and security deed to the bank, the plaintiff would have been

entitled, under all the facts alleged, to have demanded that the defendants themselves surrender the note and cancel the security deed as a part of their obligation in effectuating such rescission. In the circumstances, however, the defendants having transferred the note and security deed to the bank, the plaintiff simply gave notice of her intention to rescind, offering at the same time to reconvey the land, which of course would include her equity and right of possession, leaving it to the defendants to pay the note and extinguish the security deed. The defendants themselves had discounted the note and presumably had received the proceeds thereof, and therefore the plaintiff was under no duty to them to pay the note as the remainder of the purchase-money upon a rescission, although as between her and the bank, if the latter was an innocent purchaser, she would continue to be liable. Such continuing liability, however, would not be a *benefit* that she received under the contract; and as already stated, all that she received was an equity in the land with the right of possession. To have required her to pay the note notwithstanding the alleged fraud, would mean that, on discovering the fraud, she could not ask a rescission then and there, but should have gone forward with *further* performance as a condition precedent to such relief. Under the facts alleged, equity would not require her to perform the executory features of the contract, in order to have it rescinded. *Kerlin* v. *Young*, 159 *Ga*. 95 (1) (125 S. E. 204). According to her allegations, she did offer to restore the benefits which she had received, and equity would not require more. There may be some exceptions to the general rule with respect to restoration as stated in the Code, § 20-906, supra, as for example, where the vendor does not hold the legal title and procures a deed to be made to the vendee by a third person, to whom a part of the purchase-money is paid; or where the vendor by declaration or conduct proclaims that, if an offer to restore should be made, it would be refused. *Miller* v. *Watson*, 139 *Ga*. 29 (2) (76 S. E. 585) ; *Napier* v. *Adams*, 166 *Ga*. 403, 409, 410 (143 S. E. 566) ; *Sasser* v. *Pierce*, 9 *Ga. App*. 27 (1) (70 S. E. 197). The allegations in this case were sufficient to show compliance with the general rule, regardless of any exception, and the court did not err in overruling the general demurrer.

■ Several of the special grounds of the motion for a new trial may be considered together.

In ground 1, it was contended that the court erred in admitting the following testimony of Henry Lindon Reese, husband of the plaintiff: "Mr. Crane asked me, did I want to see the lines, and I told him I would like to see them, and he turned around to Mr. Homer Mealor and asked him, 'Does your son know the lines?' and he said 'Yes,' and he said, 'How about letting your son go with us and show us the lines and we will go back to the house? I don't feel like walking over it,' and he said 'All right,' and we started looking over the lines, Mr. Gladstone Mealor, Doyle Mitchell, and myself."

The movants objected to this evidence at the time it was offered, on the ground that it was a declaration of an agent (Crane) in an effort to prove agency, when there was no proof of such claimed agency in so far as it related to the defendant Puckett; nor was there any evidence that Gladstone Mealor was the agent of Puckett, who was not present at the time of the claimed conversation.

In ground 2, it was contended that the court erred in admitting testimony of Henry Lindon Reese as to statements made to him by Gladstone Mealor with respect to the location of the boundary lines, the objection to such testimony being substantially the same as that stated above in connection with ground 1.

Ground 5 complained of an excerpt from the charge of the court which stated, among other things, that the defendants contended that the sale "was made fairly and honestly and without any false representations to plaintiff, by their agent to her agent, or any one else." The movants assigned error upon the quoted portion of the charge, upon the grounds that they had never admitted at any time that they had acted through agents in making the sale, that the defendant Puckett contended at all times that he did not authorize any one to act for him, that he knew nothing of the representations claimed to have been made by Gladstone Mealor, and that the charge amounted to a direct statement and expression by the court to the effect that Gladstone Mealor was the agent of both the defendants in the sale of said land.

Ground 6 complained of a charge which, in referring to the contentions of the plaintiff, twice used the expression, "through the agencies involved." It is contended that this expression amounted to a statement by the court that Mr. Crane and Gladstone Mealor were the agents of the defendants in consummating the sale, whereas it was a question for the jury under the evidence as to whether either of the persons named was an agent of the defendants.

After a careful study of the evidence, we have reached the conclusion that it demanded a finding that the defendants were not mere tenants in common, as insisted by them, but that they were actually partners, or at the very least were members of a joint adventure, for the purpose of selling this land. The testimony of the defendants themselves can not, on proper construction, be reasonably considered as leading to any other conclusion as to this question. The defendant Mealor referred to Pucket as "my partner." He also testified: "Mr. Puckett advertised it for sale. It was agreeable with me to sell it. . . I was to get half of it. He had control of it. I didn't know when he priced it, but I did know that evening. He didn't talk to me about it. Mr. Crane must have represented Puckett. . . Mr. Puckett signed the joint deed. . . We got Mr. Houston to write the deed. . . I wouldn't rather risk Mr. Puckett's business judgment than mine. He just got to it before I did. I would have sold it. I had in mind what I would have sold it for."

The defendant Puckett testified: "As far as making this actual transaction, I know very little about it. . . Whatever Mr. Mealor did, he and I agreed on that, if the sale went through . . I think Mr. Mealor first located the place and I bought it. I just put in half of the money. I put an advertisement in the paper to sell it. I would think he was satisfied with what I advertised it for."

There was no testimony by the plaintiff or other witness that contradicted any of the foregoing evidence of the defendants. On the other hand, all of the evidence tended to the point that they acted in concert and as partners in this transactions. Neither one of them while testifying as a witness appeared to have any thought that he had acted merely for himself and with a

view of selling only his one-half undivided interest, in anything that he had done or said in connection with the transaction. They bought the land together. Mealor lived on it for only about thirty days, and from the testimony of each it appears they deferred to each other and depended upon each other, as partners ordinarily do. "The testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him, when it is self-contradictory, vague, or equivocal." *Steele* v. *Central of Georgia Railway Co.*, 123 *Ga.* 237 (1) (51 S. E. 438); *Shepard* v. *Chappell*, 29 *Ga. App.* 6 (2) (113 S. E. 23). Under this rule, the evidence demanded a finding that the defendants were bound as partners with respect to this transaction with the plaintiff. See, in this connection, Code, §§ 75-101, 75-102. The evidence also established without dispute that Crane was the agent of both defendants to aid in selling this land. *Cable Co.* v. *Walker*, 127 *Ga.* 65 (1) (56 S. E. 108); *Weiner Brothers Co.* v. *Tucker*, 139 *Ga.* 596 (1) (77 S. E. 811).

We consider next whether Gladstone Mealor was the agent of the partnership in pointing out the boundary lines, if he did point them out as alleged and contended by the plaintiff. "All the partners shall be bound by the acts of any one, within the legitimate scope of the business of the partnership, until dissolution or the commencement of legal proceedings for that purpose, or express notice of dissent to the person about to be contracted with." Code, § 75-302. Substantially the same rule as to the authority of a partner applies in case of a joint adventure. *Clement A. Evans & Co.* v. *Waggoner*, 197 *Ga.* 857 (2) (30 S. E. 2d, 915); 30 Am. Jur. 690, 699, §§ 26, 41. The evidence shows conclusively that the defendant Mealor did designate or appoint his son to show the boundary lines of this tract to the plaintiff's agents (her husband and brother); and since in doing so he was acting within the scope of his authority, as a member of the partnership or joint adventure, Gladstone Mealor thus became not only the agent of his father but of the partnership, and thus of both defendants, for the purpose of pointing out the lines. "The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him, or subsequently ratifies the acts of another in his behalf." Code,

§ 4-101. "Any person who is of sound mind may be appointed an agent; so a principal shall be bound by the acts of his infant agent." § 4-102. "The principal shall be bound by all the acts of his agent within the scope of his authority; if the agent shall exceed his authority, the principal may not ratify in part and repudiate in part; he shall adopt either the whole or none." § 4-302. "A ratification by the principal shall relate back to the act ratified, and shall take effect as if originally authorized. A ratification may be express, or implied from the acts or silence of the principal. A ratification once made may not be revoked." § 4-303. "The principal shall be bound by all representations made by his agent in the business of his agency; and also by his wilful concealment of material facts, although they are unknown to the principal, and known only by the agent." § 4-307.

It follows from the foregoing legal principles as applied to the evidence that, if Gladstone Mealor did in fact misrepresent the boundary lines, each and both of the defendants would be responsible for such misrepresentation (if the case was otherwise made out), even though they did not know of it until after the sale was made. *Duncan* v. *Bailey,* 162 *Ga.* 457 (6) (134 S. E. 87); *Napier* v. *Adams,* 166 *Ga.* 403 (4) (supra).

There being, as above indicated, no issue for submission to the jury as to the existence of a partnership relation between the defendants, or as to the claimed agency of Gladstone Mealor, the judge did not err in admitting the evidence referred to in special grounds 1 and 2 of the motion for a new trial, and this is true notwithstanding the separate contention as to Puckett. Nor was it error for the judge, in charging the jury, to treat all the alleged relationships that we have just discussed as having been established by the evidence as a matter of law, so as to leave no issue for the jury as to these matters.

Accordingly, it must be said also that there was no merit in grounds 4 and 5.

The rulings made above in this division as to the four special grounds stated are in like manner controlling upon grounds 3, 4, 7, 8, and 9, in which substantially the same questions were presented.

■ In ground 10, the movants assigned error upon the follow-

ing charge: "Actual fraud is not essential to setting aside a sale of lands. A misrepresentation wilfully made to deceive or made recklessly and without knowledge, if acted upon by the opposite party to a contract of sale of lands without knowledge of its falsity, would have the effect of actual fraud; but if such misrepresentations were made by mistake and innocently to the detriment of another, and amounting to only legal fraud, it would be equally effectual for that purpose of setting aside the sale of land." This charge was alleged to be erroneous for two reasons: (1) because in order for the plaintiff to be entitled to the equitable relief of rescission, she was required to show that an actual fraud had been perpetrated upon her and not merely that some innocent fraud had been committed; (2) the charge instructed the jury in effect that the sale could not be set aside for actual fraud unless the plaintiff acted upon it, whereas it might be set aside for constructive or innocent fraud, whether the plaintiff acted upon it or not.

Dealing with the second contention first, we do not think the charge could reasonably have been understood as making any such distinction as claimed between the two classes of fraud, especially in view of the words "equally effective." Nor is there any merit in the other assignment of error, contending that only actual fraud would authorize the equitable relief of rescission. While only actual fraud will authorize an ex parte rescission of a sale of personalty so as to enable the aggrieved party to sue at law, as in trover, for property that he may have delivered to the other under the contract, a sale either of realty or of personalty may be rescinded by a court of equity for mere constructive fraud, where the other essentials of the case are established. As to ex parte rescission, see *Barnett* v. *Speir*, 93 *Ga.* 762 (1) (21 S. E. 168); *Dunn* v. *Beasley*, 143 *Ga.* 376 (1) (85 S. E. 100); *King* v. *Dobbs*, 30 *Ga. App.* 441 (1) (118 S. E. 428); *Hendley* v. *Chambliss*, 30 *Ga. App.* 736 (1) (119 S. E. 351); *Penn Mutual Life Insurance Co.* v. *Taggart*, 38 *Ga. App.* 509 (144 S. E. 400). As to equitable rescission, see *Reese* v. *Wyman*, 9 *Ga.* 430; *Newman* v. *Claflin Co.*, 107 *Ga.* 89 (32 S. E. 943); *Duncan* v. *Bailey*, 162 *Ga.* 457 (2, 6, 8) (supra). See also, in this connection, Code, §§ 20-905, 20-906, 20-908, 37-702, 37-711, 96-202.

■ In ground 11, movants complained of the following charge: "Ordinarily, gentlemen, when a person in a contract claims to have been defrauded and seeks a rescission of that contract of the sale of land, as in this case, it is required by law that that person, the plaintiff in this case, restore or offer to restore whatever she received in the transaction before she is entitled to a rescission. You are instructed this case is an exception to that general rule of law, and in this case the plaintiff would not be required to convey back or offer to convey back to the defendants the land involved, for the plaintiff does not have the legal title to these lands for The Brand Banking Company is shown to hold the legal title to these lands and not the plaintiff, as already explained to you, for the purpose of securing a note of the plaintiff in the sum of $2600 besides interest." This charge was alleged to be erroneous for the reason that, under the evidence, there was no exception to the general rule that before a sale may be canceled or rescinded, the plaintiff must have restored or offered to restore what he received under the contract. The movants also alleged: "The evidence was clear, and in fact the allegations of the petition showed, that plaintiff herself had executed a note and a deed to secure the same to said land in the sum of $2600, and that this had been transferred and assigned to The Brand Banking Company on the same day they were executed, and plaintiff testified that, when the trade was made and these papers were signed by her, she knew and understood that they were to be so transferred and that that was a part of the contract of sale. Further there were no allegations of fact of plaintiff's inability to restore, nor was there any evidence why she should not restore, to defendants the title to the land she had obtained in the transaction before she filed this suit. There was not, as movant contends, one single fact or circumstance taking said case out of the general rule, and the charge as is here given was clearly error."

In the portion of the brief for the plaintiff in error relating to this ground, the only insistence is that, since the plaintiff had executed the note and the security deed, which, under agreement between her and the defendants, had been transferred by the defendants to the bank, the plaintiff should have cleared or offered to clear such encumbrance, and that, because she had not

done so, the case did not present an exception to such general rule, as was stated in the charge. In other words, substantially the same contention, and no other, was urged under this ground as was stated and dealt with in division 1, supra, relating to the general demurrer, and we reach the same conclusion here as we did there. The plaintiff and her husband both testified that she had offered to deed the property back to the defendants, and the defendant Puckett testified: "Mrs. Reese asked me to return the thousand dollars and take the place back. She made no offer to return the place free of the bank loan, nor did she offer any deed of any kind." While, in our opinion, the evidence did not present an exception such as would have relieved the plaintiff from offering to reconvey the equitable interest in the land which she had received in the transaction, and it was improper, under the facts of the case, for the judge to refer at all to an exception to such general rule as to restoration, it is not insisted that the charge was erroneous except as to clearing the title of the security deed, and, as we said in the first division, the plaintiff was not required, even under the general rule, to clear such encumbrance in order to obtain the equitable relief sought. "The equitable right to restitution upon rescission of a contract does not depend upon the full performance of the contract by the party seeking restitution. This right rests upon the doctrine that a party who has received from another anything of value by virtue of a contract can not rescind the same without restoring whatever thing of value he has so gotten." *Kerlin* v. *Young,* 159 *Ga.* 95 (1), 104 (supra).

We do not construe the decision in *Napier* v. *Adams,* 166 *Ga.* 403, 409-412 (supra), cited for the defendant in error, as being applicable to the charge here under consideration; but, in view of what has been said, any error in the charge was harmless and did not afford cause for a new trial.

■ It is contended that the evidence did not show any right in the plaintiff to rely on the representations claimed to have been made by Gladstone Mealor with respect to the boundary lines. It has been held that a purchaser of land cannot have an abatement of the purchase-price or a rescission because of false representations of the seller with respect to its character or value

where he was not prevented by fraud of the latter from inspecting it or making any other inquiry or investigation that he desired, although in buying the land he may have acted upon misrepresentations of the seller touching these matters. *Allen* v. *Gibson*, 53 *Ga.* 600; *Martin* v. *Harwell*, 115 *Ga.* 156 (41 S. E. 686). A different rule applies, however, as to representations regarding the location of land lines where the purchaser is unacquainted with the boundaries and relies upon representations of the seller with respect thereto. See, in this connection, *Brannen* v. *Brannen*, 135 *Ga.* 590 (69 S. E. 1079); *Gibson* v. *Alford*, 161 *Ga.* 672 (2 c, d) (132 S. E. 442); *Duncan* v. *Bailey*, 162 *Ga.* 457 (3, 6) (supra); *Cohron* v. *Woodland Hills Co.*, 164 *Ga.* 581 (139 S. E. 56).

The evidence authorized the verdict, and the court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*