FLETCHER *v.* FLETCHER *et al.; et vice versa.*

HINES, J. 1. Under the oral contract between T. Y. Fletcher and E. L. Fletcher, by which they agreed to exchange lands, for the failure of T. Y. Fletcher to perform his agreement therein to lift the encumbrance on his tract, so that the same could be conveyed to E. L. Fletcher free therefrom, and to build thereon a dwelling, E. L. Fletcher could, without the consent of T. Y. Fletcher, rescind the incompleted contract of exchange, upon restoring the latter to the condition in which he was before the contract was made, T. Y. Fletcher being insolvent and unable to respond to E. L. Fletcher in damages for the breach of his agreements in the respects mentioned. Civil Code (1910), § 4306.

2. The right of one party to rescind a contract, for non-performance by the other party of his obligations thereunder is not confined to covenants in their strict legal sense, but extends to agreements other than such covenants. *Sentell* v. *Mitchell,* 28 *Ga.* 196; *Willingham* v. *Hooven,* 74 *Ga.* 233 (58 Am. R. 435); *Williams Mfg. Co.* v. *Warner Refining Co.,* 125 *Ga.* 408, 412 (54 S. E. 95); *Georgia Supply Co.* v. *Coffee,* 8 *Ga. App.* 502 (69 S. E. 1083).

3. This case does not come within the rule that an absolute deed of conveyance will not, at the instance of the grantor, be cancelled merely because of a breach by the grantee of a promise made by him in consideration of which the deed was executed (*Brand* v. *Power,* 110 *Ga.* 522, 36 S. E. 53; *Christian* v. *Ross,* 145 *Ga.* 284, 88 S. E. 986; *Moore* v. *Turner,* 146 *Ga.* 197 (3), 91 S. E. 13; *Whidby* v. *Willis,* 151 *Ga.* 43, 105 S. E. 470), because the present suit is not one to cancel an absolute conveyance, and because the vendor in this case is insolvent. In cases of covenants, a breach thereof. coupled with insolvency of the covenantor, will authorize a decree of cancellation of an absolute deed of conveyance, although the instrument contains no condition upon the happening of which the estate is to determine. *McCardle* v. *Kennedy,* 92 *Ga.* 198 (17 S. E. 1001, 44 Am. St. R. 85); *Wyatt* v. *Nailer,* 153 *Ga.* 72 (111 S. E. 419). By parity of reasoning, a court of equity will more readily decree the rescission of an incomplete and unconsummated

oral agreement for the exchange of lands, where one of the parties fails to perform his part of the contract, upon performance of which the oral agreement was to be consummated by the execution of proper instruments of conveyance.

4. The erection by a party to an oral agreement for the exchange of lands of valuable improvements on the tract which he receives and takes possession of under the exchange, such party taking possession and making such improvements relying upon the promise of the other party to perform his obligations under the agreement, upon the performance of which the trade was to be consummated by the execution of the necessary papers, will not prevent such party from seeking a rescission of such oral agreement, for the non-performance by the other party of his obligations thereunder, in consequence whereof such party entirely loses the tract which he was to get under the exchange, the party so failing to perform having become insolvent and unable to respond in damages to the party seeking the rescission. Restoration does not require that the opposite party shall be placed in the exact situation in which he was before the exchange, but only that he be placed substantially in his original position, and that the party rescinding shall derive no unconscionable advantage from the rescission. 4 R. C. L. 511, § 23. The rescinding party, not being in default, would be entitled to an allowance for the value of permanent, substantial improvements erected by him on the land of his adversary. *Lytle* v. *Scottish American &c. Co.*, 122 *Ga.* 458 (12) (50 S. E. 402). Likewise, the fact that the plaintiff had disposed of timber on the land so received by him under the exchange, and that one of the mules received by him under the exchange had died, would not deter him from rescission, he offering to account for the value of the timber and the mule.

5. The petition sufficiently alleges that the plaintiff notified the defendant of his intention to disaffirm the contract, and that he had offered to restore the status before the institution of this suit.

6. Where the defendants took possession of the land of the plaintiff under the parol contract of exchange hereinbefore mentioned, and received therefrom rents and profits sufficient to discharge the debt secured by the plaintiff's deed to the defendant, Fletcher, the plaintiff by appropriate equitable pleadings could sue for a rescission of the parol contract of exchange, and an accounting and recovery of the land, the last relief being based on the ground that such rents and profits were sufficient to discharge the debt; and if on the hearing it should appear that the plaintiff was entitled to rescission of said contract, and that the secured debt had not been wholly discharged, a verdict may be rendered fixing the amount of the debt remaining unpaid, and finding the property for the plaintiff on payment of such amount. *Waller* v. *Dunn*, 151 *Ga.* 181 (106 S. E. 93). An accounting between the parties being necessary to fix the amount of the secured debt, no formal tender of the actual amount which may be due the defendant and grantee in the security deed was necessary; and it was sufficient for the plaintiff in his petition to offer to pay whatever amount might be found to be due to the defendant, Fletcher, upon an accounting. *Wynne* v. *Fisher*, 156 *Ga.* 656 (119 S. E. 605).

7. The equity under a contract for value is superior to that of a mere

volunteer. Civil Code (1910), § 4525. It follows that the equity of a party to an oral contract for the exchange of lands, who is entitled to a rescission of such contract for non-performance by the other party thereto of his covenants thereunder, is superior to the equity of a donee who claims, under gift from the party in default, the land of the party seeking to rescind the contract, and to recover the land which he was to exchange for the land of the party so in default.

8. The plaintiff's amendment to his petition did not set up a new and distinct cause of action, and the trial court properly overruled an objection to its allowance on this ground.

9. Applying the above principles, the court below erred in sustaining the demurrer, either upon its general or special grounds.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur, except Russell, C. J., dissenting.*

Nos. 4080, 4093. SEPTEMBER 30, 1923.

Equitable petition. Before Judge Crum. Ben Hill superior court. October 22, 1923.

In 1912 E. L. Fletcher owned a lot of land of 333 acres in Irwin County, and wanted to borrow money thereon. His brother, J. E. Fletcher, also owned land, and wanted to borrow money. Both brothers thinking that the financial standing of J. E. Fletcher was such that he could better succeed in getting loans for both by having the title to E. L. Fletcher's land in his name, E. L. Fletcher made an unconditional deed to his land to J. E. Fletcher for the purposes stated. J. E. Fletcher carried out the plan as agreed, and succeeded in getting the desired loan for E. L. Fletcher, and also a loan for himself. E. L. Fletcher remained in possession of his land. At the time of the above agreement J. E. Fletcher was indebted to his brother, T. Y. Fletcher, and later became still further indebted to T. Y. Fletcher. In consideration of his then and further indebtedness to T. Y. Fletcher, E. L. Fletcher agreed to have J. E. Fletcher convey the title to said land to T. Y. Fletcher, with the understanding and agreement that the latter hold the title as security for such indebtedness as E. L. Fletcher owed or might afterwards owe to T. Y. Fletcher, the conveyance, however, being subject to a loan of $3300 on E. L. Fletcher's land, which had been borrowed by him in accordance with the agreement with J. E. Fletcher. The deed from J. E. Fletcher to T. Y. Fletcher was made on July 10, 1912, being a regular warranty deed of conveyance, subject to the loan deed of $3300 which had been made by George M. Forman, and was accepted by T. Y. Fletcher to be held only as security for the indebtedness due by

E. L. Fletcher to T. Y. Fletcher and any further indebtedness to him, with the agreement that T. Y. Fletcher would reconvey the property to E. L. Fletcher upon the payment of such indebtedness. At the time of this agreement E. L. Fletcher was in actual possession of this land, and T. Y. Fletcher knew that the title had been originally conveyed to J. E. Fletcher for the purposes above stated. In January, 1918, T. Y. Fletcher owned, subject to loan deed or deeds, a large body of land, consisting of various lots in Irwin, Turner, and Tift Counties. Among them was a lot of land known as No. 15 in the second district of Turner County, containing 550 acres. T. Y. Fletcher had conveyed this body of land, embracing said lot, by deeds to secure debts amounting to $83,000. T. Y. Fletcher intended to give his daughter, Mrs. McCowan, lot No. 15, but as she preferred, and he later preferred, for her to get the above tract of 333 acres owned by E. L. Fletcher, an exchange of these two lots was agreed to between E. L. Fletcher and T. Y. Fletcher; and in order to clear the title to lot No. 15 T. Y. Fletcher "was undertaking to arrange, and claimed to have arrangement made, whereby he was to sell off some of his lands out of the sale, of which about $33,000 of his indebtedness was to be paid and his debt reduced to that extent," and thereby to procure the release of lot No. 15 from any encumbrance. Thereupon a tripartite agreement was made between said T. Y. Fletcher, Mrs. McCowan, and E. L. Fletcher, that T. Y. Fletcher either had given or would give to Mrs. McCowan lot No. 15 and would at once carry out the plan and procure the release of this lot from his security deed, and all other encumbrances, and that there should be an exchange of lands between him and E. L. Fletcher, so that the latter would acquire lot No. 15, free from all encumbrance, and Mrs. McCowan should have and acquire the 333 acres of E. L. Fletcher. The indebtedness against E. L. Fletcher's tract of 333 acres had been taken up by T. Y. Fletcher, and E. L. Fletcher was indebted to T. Y. Fletcher for the amount so paid, the same to be taken into account in the accounting necessary for a settlement of the mutual indebtedness or accounts between them.

It was further agreed that T. Y. Fletcher and Mrs. McCowan would build a good and substantial dwelling-house on lot No. 15 at their own expense, as well as furnish E. L. Fletcher with two mules as further consideration for the exchange. This agreement

was carried out promptly "to the following extent," that E. L. Fletcher surrendered to Mrs. McCowan his 333 acres and she entered into possession, and T. Y. Fletcher and Mrs. McCowan surrendered possession to E. L. Fletcher of lot No. 15, and E. L. Fletcher entered into possession solely under and by virtue of said contract, and T. Y. Fletcher delivered to E. L. Fletcher the two mules agreed upon. T. Y. Fletcher then undertook to carry out his agreement to obtain the full release of lot No. 15 from the security deed above mentioned, and to clear the title thereof absolutely. Ever since the exchange Mrs. McCowan has been in possession of E. L. Fletcher's tract of 333 acres, and E. L. Fletcher has been in possession of lot No. 15. The encumbrance on lot No. 15 is in excess of the value of the land, and the encumbrance on the 333 acres has already been removed. It was an essential condition to the completion of the contract of exchange, that the loan deed and all other encumbrances should be removed from lot No. 15, as obligated by T. Y. Fletcher. While T. Y. Fletcher attempted to clear the title to lot No. 15, as he had agreed, this land lot has now been involved in extensive litigation between T. Y. Fletcher and the holder of the security deed and others, and T. Y. Fletcher is totally unable to carry out his contract to clear the title. Mrs. McCowan was a party to the obligation to clear the title, though the means necessary for that purpose were to be furnished by T. Y. Fletcher. T. Y. Fletcher and Mrs. McCowan are totally unable to carry out their obligation under said agreement to clear the title to lot No. 15. This would not have required more than four months. E. L. Fletcher has no relief except through a rescission of the contract; he waited until the harvest season of the second year after the trade was made; and as nothing was done, he demanded of T. Y. Fletcher and Mrs. McCowan a rescission of the contract. E. L. Fletcher has fully paid T. Y. Fletcher, and the latter is now indebted to him in a large sum upon a fair accounting. At the time E. L. Fletcher went into possession of lot No. 15 only 50 acres of land were cleared thereon, and, except for additional land cleared by petitioner, that has been the only farming land obtained by him under the contract; whereas on the tract of 333 acres there are 250 acres in cultivation, highly improved and fertile. The difference in the farming values of the two places is well illustrated by the fact that in the first year,

1918, E. L. Fletcher was able to make only 6 bales of cotton on lot 15, whereas T. Y. Fletcher and his daughter, operating the farms on the 333 acres, made 80 bales of cotton, and in this way the money crops made on the farm previously belonging to E. L. Fletcher for that year and the years 1919 and 1920 will amount to approximately $25,000, whereas that made with equally good farming on lot 15 would not exceed $5000; and in equity and good conscience, as E. L. Fletcher has been wrongfully withheld from regaining possession of his said farm by T. Y. Fletcher and his daughter, the items should be charged against each on this basis, in the mutual accounting necessary to get the true status of accounts between E. L. Fletcher and T. Y. Fletcher and Mrs. McCowan. E. L. Fletcher is entitled to be credited with the difference in the income from the two places (or rental value if the court should so determine) in said accounting with T. Y. Fletcher. E. L. Fletcher has built several dwelling-houses and shanties on lot 15, and has cleared up and reduced to cultivation 25 acres of land thereon, reasonably worth $250; and performed other services of a stated value.

In addition to E. L. Fletcher's indebtedness to T. Y. Fletcher for taking up the loan of $3300, E. L. Fletcher was indebted to him in the sum of $1800, the amount of a note taken up, as well as various other debts which are named. One of the two mules has died, without fault on the part of E. L. Fletcher, and the other has been turned back to T. Y. Fletcher. If it should be held that E. L. Fletcher is liable for the dead mule, he will account for its value. E. L. Fletcher sold timber on lot 15, of the value of $1000, and offers to account for it. He offers to do what is required to do complete equity, and to restore to T. Y. Fletcher and his daughter everything he received under the contract.

E. L. Fletcher filed his petition in equity against T. Y. Fletcher and Mrs. Mary McCowan, alleging the above-stated facts, and praying for a complete rescission of the contract of exchange, each party being restored to his or her status before the making of the contract; that the defendants be required to restore to him possession of his farm; that there be an accounting between him and the defendants to ascertain the state of their accounts; that the defendants be enjoined from selling or encumbering his land; and for general relief. The petitioner offered to restore to the de-

fendants lot No. 15. The defendants demurred to the petition, on the ground that it set forth no cause of action. By an amendment plaintiff alleged that Mrs. McCowan was insolvent; that the lands embraced in the security deed made by T. Y. Fletcher to George F. Paulk were wholly insufficient to pay the amount of the indebtedness thereby secured; that T. Y. Fletcher had refused to comply with his contract to build the house on lot No. 15 as good as any on the land petitioner was giving him in exchange; that T. Y. Fletcher had fraudulently induced petitioner to make said contract of exchange, by representing that an arrangement had already been made with Paulk whereby Paulk would procure a loan sufficient to pay off the indebtedness of T. Y. Fletcher and to discharge all liens against lot 15, which representation was untrue; that the defendants have it in their power to transfer title to his tract of land and thus involve him in inevitable loss; that there is no deed record from T. Y. Fletcher to Mary McCowan to his tract of land; that there has been in the United States district court a final decree of foreclosure of the security deed given by T. Y. Fletcher, under which said lot has been sold since institution of this suit, whereby all title of T. Y. Fletcher thereto has been divested; that he has been forced to attorn to the purchaser at said sale, in order to retain possession of said lot; that Mary McCowan has no interest in his tract of land except as a donee of T. Y. Fletcher; that in the latter part of August, 1922, he made a demand on T. Y. Fletcher for a rescission of said contract of exchange, at which time he offered to restore to him possession of lot 15; that T. Y. Fletcher was the administrator of the estate of his mother, and his share of said estate was approximately $500, which T. Y. Fletcher held and appropriated to his own use, by reason of the mutual accounts between them, and this amount should be charged to T. Y. Fletcher in the accounting; and that the money crops from petitioner's lands received by defendants were of the approximate value of $11,800 in 1918, $7950 in 1919, and $6187.50 in 1920.

To the allowance of the amendment the defendants objected on the grounds, (1) that there was nothing in the original petition to amend by, and (2) that it set forth a new and distinct cause of action. The court overruled the objections, and allowed said amendment subject to demurrer. To this ruling the defendants

excepted pendente lite, and assigned error thereon in their cross-bill of exceptions. To the petition as amended the defendants renewed their demurrer on the grounds: (1) That there was no equity in the petition; (2) that it set forth no cause of action either in law or equity; (3) that the plaintiff was not entitled to the relief prayed; (4) that it is not alleged that the agreement entered into by T. Y. Fletcher was based upon any consideration, and (5) that there is no allegation whatsoever to bind Mary McCowan as to any encumbrance on the property exchanged, for which reason plaintiff would not be entitled to any relief against her. The defendants demurred to the amendment on the ground that it set up a new and distinct cause of action. They further demurred to the petition as amended on the grounds: (7) that it sets forth no cause of action against either of the defendants; (8) that it is not alleged that Mary McCowan ever entered into any agreement with plaintiff whereby she was to remove the alleged liens against lot 15, but that the said liens were to be removed by said T. Y. Fletcher; (9) that it is not alleged that plaintiff has paid to T. Y. Fletcher the indebtedness which he admits owing him. There were various grounds of special demurrer to the petition. The court sustained the demurrer and dismissed the petition. To this judgment the plaintiff excepted.

*A. J. & J. C. McDonald* and *Eldridge Cutts,* for plaintiff.
*Wall & Grantham* and *Quincey & Rice,* for defendants.