## WILLIAMS et al. v. FOUCHE.

1. As a general rule, one who seeks rescission of a contract on the ground of fraud must restore, or offer to restore, the consideration received thereunder, as a condition precedent to bringing the action; and a petition which fails to allege restoration or offer to restore before institution of the suit is demurrable. But where the circumstances are such that immediate commencement of the suit is necessary in order to preserve the rights of the plaintiff, and where the defendant is in such drunken condition as to cause him to be "out of his mind" and where after the suit has been filed the plaintiff offers restitution as soon as the defendant becomes sober, the general rule above announced does not apply.

(a) The mere fact that the plaintiff fears a difficulty with the defendant if a personal conference should be had between them will not be sufficient excuse for a failure to offer restoration.

(b) The exceptions to the allowance of the amendment to the petition, over objections in the nature of a general demurrer, are without merit.

2. It was not erroneous to admit the evidence the admission of which is complained of in the fifth ground of the motion for new trial, for the purpose of explaining the conduct of the plaintiff; but it should be so limited by proper instructions of the court to the jury.

3. The evidence offered in support of the amendment referred to in subsection (b) of the first division, referring to excuse for failure to offer to restore the property, did not demand a finding in favor of the plaintiff on the question presented by such amendment; and for that reason it was erroneous for the judge to direct a verdict for the plaintiff.

4. As a reversal of the judgment of the trial court will result from application of the foregoing rulings which will cause both the verdict and decree to be set aside, no decision will be made at this time upon other assignments of error.

No. 4473. AUGUST 14, 1925.

51

WILLIAMS *v.* FOUCHÉ.

Equitable petition. Before Judge Custer. Dougherty superior court. June 7, 1924.

*Claude Payton* and *Pope & Bennet,* for plaintiffs in error.

*Lippitt & Burt,* contra.

ATKINSON, J. 1. When this case was before the Supreme Court on a former occasion (*Williams* v. *Fouché,* 157 *Ga.* 227, 121 S. E. 217), it was held: "One who seeks rescission of a contract on the ground of fraud must restore, or offer to restore, the consideration received thereunder, as a condition precedent to bringing the action; and a petition which fails to allege restoration or offer to restore before institution of the suit is demurrable." It was stated in the opinion that "there are exceptions to this general rule, based upon equitable reasons, . . · but this case does not fall within any of these exceptions." On the basis of that ruling the judgment of the trial court overruling the demurrer to the petition was reversed. When the case was returned to the trial court the plaintiff tendered an amendment to the original petition, for the purpose of bringing the case within the exceptions. The petition alleged that the plaintiff discovered the falsity of the representations relied on as grounds for rescission, the day prior to the bringing of the suit. The amendment alleged that on the morning of the day the suit was instituted the plaintiff learned that the defendant was in a drunken condition and causing the sawmill property to be dismantled for the purpose of removing it to Florida, and was cursing and shooting his pistol promiscuously on the premises, demoralizing the hands and behaving in a boisterous manner; that it was necessary to sue immediately to preserve the status of the property, and it was impossible to make an offer to restore the property before bringing the suit, because (1) the defendant "was out of his mind and in said drunken and intoxicated condition," so that a tender would have been useless; · (2) the plaintiff feared that the defendant would kill or do him serious bodily harm. The amendment also alleged that as soon as the defendant became sober the plaintiff tendered to him the shares of stock, and the tender was refused. The trial judge allowed the amendment, over the objections that the allegations contained therein were irrelevant and insufficient in law to relieve the plaintiff from making a tender, and error is assigned upon the ruling of the court allowing the amendment. The allegations of

the amendment make a case where it was necessary for the plaintiff to immediately sue for injunctive relief to preserve the status of the property. The effect of an offer to restore property received in virtue of a contract of sale by one seeking rescission of the contract is twofold: (1) it is an offer by the plaintiff to do equity by restoring the property he has received under the contract which he seeks to rescind; and (2) it affords the opposite party the opportunity to agree to the rescission, without being forced to incur the expense of litigation. In this case, if the defendant was in a drunken condition and on account of such condition "was out of his mind," he would not have been in any condition to contract or to be bound by an acceptance of a tender as a condition to a rescission, and consequently it would be useless to make a tender while the defendant was in such condition. If as soon as the defendant was in condition to entertain the offer to restore the property the plaintiff made such an offer, which was refused, the plaintiff would have offered all that he could in order to do equity. The amendment alleges such a case, and to that extent alleges sufficient to take the case without the general rule that the offer to restore must precede the filing of the suit and to place it within the exceptions. Except as indicated, the other matters alleged in the amendment as excuse for not offering to restore the property were insufficient. If the plaintiff feared a personal difficulty with the defendant, he could have submitted his offer to restore by some other means than by a personal conference with the defendant. But the objections to the amendment were in the nature of a general demurrer; and as it alleged sufficient grounds to excuse an offer to restore, the court did not err in allowing the amendment over the objections urged against its allowance, though it did contain certain allegations that were by themselves insufficient and irrelevant.

2. The fifth ground of the motion for new trial complained of the admission in evidence of certain testimony of the plaintiff while he was being examined as a witness in his own behalf. The witness had testified that before the suit was filed, and after he had learned of the alleged misrepresentations of the defendant, he had "started out to the mill where Williams was, to talk the matter over with Williams, and on his way out had met Mr. Rogers." He then proposed to testify to statements made to him

by Mr. Rogers. Objection was urged to the admission of such statements, and the court overruled the objections and allowed the witness to testify: "I met Mr. Rogers there about the creek, and I says: 'How is everything getting along at the mill?' and he says: 'Well, your partner [referring to defendant Williams] is drunk and raising the devil out there and tearing up the mill and fixing to move it.'" The objection that was urged to the admission of the evidence was that it was hearsay. The plaintiff's attorney responded to the objection by stating that the evidence was offered "to show that the plaintiff thus found out that a tender of a return of the stock which the plaintiff had bought from the defendant would be impossible under the circumstances." The statements made by Mr. Rogers out of the presence of the defendant were hearsay. Although they were hearsay, they would have been admissible if used for no other purpose than to explain the conduct of the plaintiff in not going on to see the defendant; but such testimony was not admissible to prove the truth of the statements. The trial court should so limit the testimony in admitting it by proper instructions to the jury. Being admissible for the above purpose, the court below did not err in letting it go to the jury.

3. The judge directed a verdict for the plaintiff. It was a part of the plaintiff's case to show that the plaintiff had offered to restore the property before bringing the suit, or that the circumstances of the case were sufficient to show an excuse for not making an offer to restore. There was no offer to restore, but the plaintiff amended his petition so as to allege an excuse for not offering to restore. It was a part of his case, and he could have no recovery against the defendant without proof of the facts relied on to excuse him from offering to restore the property. In order to authorize the direction of a verdict for the plaintiff, the allegations relied on to show the offer to restore must be shown by uncontradicted evidence, giving weight to all reasonable deductions to be drawn therefrom. The evidence offered to support the material allegations of the amendment hereinbefore referred to was: The plaintiff testified: "I discovered that the representation made to me by Frank Williams . . was false. When I discovered it the first thing I did I came to your [plaintiff's attorneys'] office, . . on Thursday afternoon. . . It was too late, you

all said, to do anything that afternoon. I went out home and spent the night. . . I started to the mill Friday morning to see Mr. Williams and talk this matter over with him. I met Mr. Rogers out there about Piney Woods Creek. . . I said to him, 'How is everything at the mill?' He says, 'Well, your partner is drunk, raising the devil out there, tearing up everything and fixing to move.' I went on up the road about a half of a mile, and stopped to think about what I had better do, go on to the mill or what to do. I was worried a whole lot, of course. I came on back to town, went to [my attorneys'] office and filed the suit. The first time I saw Williams after suit was filed was Saturday morning afterwards, about 11 o'clock. . . He appeared to me that he had been drunk; his eyes were red, and I smelled whisky all over the car, or over him, or somewhere. I told him, if he would give me what I had put into this proposition, that he could take the mill and go on to Florida; and Frank said, 'No, you have throwed it in court now; there is a whole lot of cost to it,' and I told Frank, 'I will go ahead and take care of the costs; you have misrepresented things to me from start to finish, and I don't care for a partner of that kind, and I will be glad to get out of it.' " On cross-examination the witness testified that on a former trial he had testified: "I would have gone out there to see Mr. Williams, but knew the difficulty we had had in the first trade," and "that is true now. . . That was one of the reasons I did not go out there. . . As to whether it was my mental condition then, and not Frank's, that kept me from going out there, it was both of us. I knew my own mental condition. As to whether it was such as I thought I could not go to see him, well I was all tore up. When I brought this suit on Friday, Mr. Burt and I carried it to Bainbridge to get the judge to sign it; we left Albany about 12 o'clock and got back here about four o'clock; was there only a few minutes."

The witness Rogers testified: "I saw Frank Williams on the 17th day of November, 1922, at his mill . . about daylight that morning. . . He came out where I was hauling lumber; asked me to take a drink. I told him I never did refuse; so we went on to the car, and taken a drink of whisky. I got one wagon loaded, and went back out there and asked him to come and check the lumber; and he says 'Let's take another drink,' so I took an-

other drink with him; and he came out and began to check the lumber, to try to check it, and didn't check what I thought was on the wagon, and I told him that wasn't right; that I know according to the loads I have been hauling. He says, 'It is right,' and I said, 'It is not.' I said, 'Before I will haul the stuff I will throw the dam stuff off;' and he says, 'There is no use falling out; we will get Mack to check it;' and he says, 'We'll take another drink,' and we went on up there and took another drink; that was the third drink before breakfast. McDonald checked the lumber. Williams was drinking before I got there, and took three drinks before breakfast; then there was three or four drinks taken out the quart bottle, leaving something like a pint and half in the bottle. I didn't see him any more until I come to town and went back; he had a gallon-jug when I come back, sitting on the running-board of the car; that was about 12 o'clock; he was then what I called drunk. When I drove up he pulled his pistol out and shot twice, and he says, 'Come on and let's take another drink,' and I put my mules in the stable and fed them. He was using profanity and cursing. McDonald was tearing down the mill to ship to Florida; said he wanted me to go back and get it off on the night train. I met Fouché that morning about 8 o'clock. Mr. Williams had shot twice before I left there before coming to town; negroes were scattered all over the place. I told Mr. Fouché they were tearing everything up out there, and I said, 'Frank is drunk and raising hell.' I told him also about Williams shooting off his pistols."

The witness Denson testified: "I am deputy sheriff. On Friday, November 17th, I was given the petition to serve upon Williams, the day it had been filed. I didn't serve it that day; went to his house. Mrs. Williams came to the door and asked me what I wanted to see him about; told her I had a paper to serve him with. He was in an adjoining room; could hear him groaning. She said he was not in condition to be served, that he was drunk." On cross-examination the witness testified: "Mr. Tarver, the sheriff, finally served the paper. I went back the next morning, but could not catch him; he had gone Saturday morning."

The defendant was not present and did not testify, and there was no contradiction of the witnesses giving the foregoing testimony. But that evidence fails to show that the defendant was

intoxicated before the suit was filed, to the extent of being "out of his mind" as charged in the amendment. It can not be said that this testimony and all reasonable deductions therefrom demanded a verdict for the plaintiff on the proposition that the plaintiff was excused from offering to restore the property before institution of the suit. In the circumstances it was erroneous to direct a verdict for the plaintiff.

4. Other assignments of error were made upon the direction of the verdict, that related to the merits of the plaintiff's case aside from the question of an offer to restore the property, and also upon the lawfulness of the decree that was entered by the court; but as there must be a reversal of the judgment of the trial court for the reasons above stated, which will cause both the verdict and decree to be set aside, no decision will be made at this time upon such other assignments of error.

*Judgment reversed. All the Justices concur.*