## NAPIER v. ADAMS.

1. The law imposes upon every agent the obligation to exercise for and in behalf of his principal skill, loyalty, and absolute good faith. The principal bargains for the exercise of the disinterested skill, diligence and zeal of the agent for his exclusive benefit. This the agent can not do if he is the agent for both parties, for the reason that the agent undertakes inconsistent duties. Such a situation places the agent under a temptation to deal unfairly with one or both of his principals.

2. A mutual agency requires the consent of both principals to the mutuality of the agency; and without such mutual consent the agent commits a fraud on his principals in undertaking, without their consent or knowledge, to act as their mutual agent.

3. In all cases, where, without the assent of the principal, the agent has

assumed to act in such double capacity, the principal may avoid the transaction at his election, if he acts promptly; and it makes no difference that the principal was not in fact injured, or that the agent intended no wrong, or that the other party acted in good faith. This doctrine is based upon the ground that the double agency is a fraud upon the principal, and that by reason of such fraud he is not bound by any transaction entered into with the other party.

4. So where the agent of the seller entered into the service of the purchaser of real estate for the purpose of securing for the latter advantageous bargains, without the knowledge of or assent to the dual agency, by the purchaser, and conducted for the purchaser the negotiations which led up to the consummation of the trade by the execution by the parties of the necessary papers to complete the trade, the purchaser, as between him and seller, can repudiate such sale, notwithstanding the fact that the seller was ignorant of the fact that the agent was acting in the transaction for the purchaser.

5. The court below erred in sustaining the demurrer.

No. 6410. APRIL 13, 1928. REHEARING DENIED JUNE 13, 1928.

Petition for injunction. Before Judge Mathews. Bibb superior court. December 6, 1927.

J. B. Adams had or claimed some right, title, or interest in certain real estate in the City of Miami, Florida, under an executory contract of sale from C. F. Thatcher, in whom the title to said property was vested. On August 8, 1925, E. T. Napier purchased said property from J. B. Adams. The contract of purchase was finally consummated by the delivery to Napier of a warranty deed executed in the names of Charles F. and Lena Frazier Thatcher. At the same time Napier executed and delivered to Adams his mortgage on said property, securing the payment of three promissory notes in the sum of $2000 each, which notes and mortgage were dated August 8, 1925. Said notes matured one in each year thereafter. The purchase of said property was made under the following circumstances: Napier, who was a resident of Macon, Georgia, went to Miami, Florida, and was introduced by certain Macon people to Walter P. Callaway, a real-estate agent, with offices in Miami. Napier stated to Callaway that he was unfamiliar with real estate conditions in Miami, and knew nothing of the value and prospects of Miami property, and thereupon employed Callaway to select for him real estate to be purchased, to negotiate for such purchase, and generally to represent him in acquiring title to some Miami real estate, provided such purchase should be recommended by Callaway. Callaway showed Napier the real estate purchased by him from Adams, and recommended to Napier the purchase thereof, stating

that he would see what said real estate could be purchased for. Callaway required Napier to deposit with him $4250, which should be the compensation of Callaway for securing such property for Napier, and which sum was, as Napier is advised and believes, finally appropriated to the payment of said compensation of Callaway in procuring said property for Napier. Nothwithstanding the fact that Callaway was thus engaged by Napier to represent him in the purchase of said property, and more particularly in determining whether Napier should buy, at what price he should buy, and under what terms payment for such property should be made, Callaway was at all times during the negotiations for the sale of said real estate the agent of the seller, which fact was unknown to Napier until on or about August 5, 1927. All of the papers in connection with the consummation of such sale were prepared by or at the instructions of Callaway, and forwarded to Napier for execution. They were executed in compliance with said instructions.

On August 16, 1927, Adams brought suit in the city court of Macon upon two of said promissory notes. On November 14, 1927, Napier filed against Adams his petition in Bibb superior court, in which he set out the facts hereinbefore stated, and alleged that his contract of purchase was void at his option, on account of the dual agency of Callaway in procuring said contract, and he sought to enjoin Adams from prosecuting his suit in said city court, from transferring one of the purchase-money notes given him by Napier on the purchase-price of said property and which had not matured, and to recover from Adams the sum of $2240 which he had paid Adams on the purchase-price of said property. To this petition Adams demurred upon the grounds that there was no equity therein, and that the court was without power and authority to restrain the action at law under which the injunction was sought, under the allegations of the petition. The trial judge overruled the demurrer "as far as the jurisdiction of this court is concerned," but sustained it "upon the ground that there is no equity in the petition, because the plaintiff fails to show that he has any valid defense to the defendant's suit in the city court of Macon." To this judgment Napier excepted.

*Brock, Sparks & Russell,* for plaintiff.
*Harris, Harris & Popper,* for defendant.

HINES, J. (After stating the foregoing facts.) Adams purchased certain real estate in Miami, Florida, from Thatcher, under an executory contract of sale. Adams listed this property for sale with Callaway. Napier, being a non-resident of Florida, and being unfamiliar with real estate in Miami, and knowing nothing of the value and prospects of Miami property, employed Callaway to select and recommend to him for purchase such real estate as he might buy in the City of Miami, informing Callaway that he would have to rely upon him to select such real estate as he might purchase, to negotiate for its purchase, and generally to represent him in acquiring title to such real estate, and that he would not buy any real estate unless recommended by Callaway. Callaway accepted such employment. Callaway showed this real estate to Napier and recommended its purchase by him. Upon this recommendation Napier bought the property from Adams. The written instruments by which the trade was consummated were prepared by or under instructions from Callaway, but the same were executed by the principals in their own names. When Napier employed Callaway as a real-estate agent to represent him in the purchase of real estate in Miami, and at all times during the negotiations which led up to the consummation of the purchase of this real estate by Napier from Adams, Napier did not know that Callaway was the agent of Adams in making such sale. Whether Adams knew before or at the time when the trade was consummated that Callaway was the agent of Napier in this transaction does not appear from the record. In these circumstances, can the purchaser repudiate the sale at his option? The purchaser insists that this question should be answered in the affirmative. The seller contends that it should be answered in the negative. This is the nut we have to crack.

The relation between a principal and an agent is one of a fiduciary character. Civil Code, § 4628. The law imposes upon every agent the obligation to exercise, for and in behalf of his principal, skill, loyalty, and absolute good faith. It is of the essence of the contract of the agent that he will use his best skill and judgment to promote the interest of his employer. *Ramspeck* v. *Pattillo,* 104 *Ga.* 772, 775 (30 S. E. 962, 42 L. R. A. 197, 69 Am. St. R. 197); *Phœnix Insurance Co.* v. *Hamilton,* 110 *Ga.* 14, 17 (35 S. E. 305); *Sessions* v. *Payne,* 113 *Ga.* 955, 956 (39 S. E. 325); *Manis* v. *Pruden,* 145 *Ga.* 239 (88 S. E. 967); *Murphy Hardware Co.* v. *Rhode Island*

*Insurance Co.,* 153 *Ga.* 273 (111 S. E. 808); *Reserve Loan &c. Co.* v. *Phillips,* 156 *Ga.* 372, 377 (119 S. E. 315). This the agent can not do if he is the agent for both parties. To represent both parties as their agent is to undertake inconsistent duties. "A mutual agency requires the consent of both principals to the mutuality of the agency." *Croghan* v. *New York Underwriters' Agency,* 53 *Ga.* 109. An agent can not use his best skill and judgment to promote the interest of his employer where he acts for two persons whose interests are essentially adverse. Such a situation places the agent under a temptation to deal unjustly with one or both of his principals. *Walker* v. *Osgood,* 98 Mass. 348 (93 Am. D. 168). He thus commits a fraud on his principals in undertaking, without their consent or knowledge, to act as their mutual agent. *Farnsworth* v. *Hemmer,* 1 Allen, 494 (79 Am. D. 756). "The law of agency is, that the principal bargains for the exercise of 'the disinterested skill, diligence, and zeal of the agent for his exclusive benefit.' He can have no interest and do no act adverse to the interest of his employer, or incompatible with the application of his best skill, zeal, and diligence to the promotion of that interest." *Harrison* v. *McHenry,* 9 *Ga.* 164, 166 (52 Am. D. 435). Where the agent of the vendor is also the agent of the purchaser, the effect of the dual agency would authorize the vendor to repudiate the transaction, if he acts promptly after discovery of the situation. *Whitley* v. *James,* 121 *Ga.* 521 (49 S. E. 600). "Where an agent without the full knowledge and consent of his principal represents the adverse party in a transaction, his contracts relating thereto are voidable at the option of the principal." 2 C. J. 838, § 520(b). It follows that the purchaser could equally repudiate the transaction. To allow the agent of the vendor to become interested as the agent of the purchaser, or vice versa, in the subject-matter of the agency, raises such a dangerous conflict between duty and self-interest that the law wisely and peremptorily prohibits it. *McKinley* v. *Williams,* 74 Fed. 94, 95; *Donovan* v. *Campion,* 85 Fed. 71. "An agent can not make a valid contract where, in the same transaction, he acts as agent for both parties." 1 Am. & Eng. Enc. L. (1st ed.) 380. "In all cases, where, without the assent of the principal, the agent has assumed to act in such double capacity, the principal may avoid the transaction, at his election." 21 R. C. L. 827, § 11. So an agent who is employed and relied upon to exercise

in behalf of the principal his skill, judgment, knowledge, or influence in the purchase of real estate, will not be permitted, without his principal's full knowledge and consent, to represent the seller in the sale. Such conduct is a palpable fraud upon his principal. In such circumstances the agent will not be entitled to compensation for services so rendered the purchaser. Moreover, the contract or dealings made or had by the agent so acting also for the other party, without the knowledge or consent of his principal, are not binding upon the latter. As long as they remain executory the principal may repudiate them on that ground. If they have been executed in whole or in part, he may by acting promptly and before the rights of innocent parties have intervened, upon restoration of any benefit which he has received, rescind the contract and recover back the property or rights with which he has parted under it. It makes no difference that the principal was not in fact injured, or that the agent intended no wrong, or that the other party acted in good faith. This doctrine is based upon the ground that the double agency is a fraud upon the principal, and that by reason of such fraud he is not bound by any transaction entered into with the other party. Mechem states the doctrine thus: "If *my* agent enters into *your* employment without your knowledge of and consent to the double agency, you may repudiate, because you were entitled to have a free and unprejudiced agent. Similarly, if *your* agent enters into *my* employment without my knowledge of the double relation, I may repudiate. If *my* agent enters into *your* employment with your knowledge and consent, but without mine, I may repudiate, because you have practically seduced and corrupted my agent. You are an accomplice. If your agent enters my employment, with my knowledge and consent but without yours, you may repudiate for the same reason. These cases are not difficult." 2 Mechem on Agency, 1715, §§ 2138, 2139. Of course a principal who selects an agent, knowing that he is the agent of the opposite party, can not himself disaffirm dealings on that account. *Fitzsimmons* v. *Southern Express Co.,* 40 *Ga.* 330 (2 Am. R. 577); *F. & W. Grand &c. Stores Inc.* v. *Eiseman,* 160 *Ga.* 321, 328 (127 S. E. 872). So where the agent of a seller of real estate enters into the service of the purchaser of real estate for the purpose of securing for the latter advantageous bargains, without the knowledge of or the consent to the dual agency by the purchaser, and such dual agent con-

ducts for the purchaser all negotiations in behalf of the latter which lead up to the consummation of the trade by the execution of the necessary papers by the parties to consummate the trade, the purchaser can repudiate such sale, upon the ground that the agent has perpetrated a fraud upon him in the transaction while undertaking to act for both parties, without full knowledge of and consent to the dual agency by the purchaser. Nor would this rule be different if both principals were ignorant of the fact that the agent was acting for both of them. Although both principals were innocent parties in the transaction, neither will be allowed voluntarily to retain benefits or advantages which come to him only through the act of his agent, and as the result of that agent's perfidy to both principals. Nor would this principle be different where the transaction, which was brought about by such dual agent, was finally consummated by the principals by the execution in their own names of the necessary documents to consummate and complete the transaction. Nor can we agree with learned counsel for the defendant that the authorities do not sustain the principle which we announce.

It follows that the trial judge erred in sustaining the demurrer to the petition upon the ground that the facts alleged did not constitute a good defense to the notes sued upon in the city court of Macon.

*Judgment reversed. All the Justices concur, except Gilbert, J., disqualified.*

### ON MOTION FOR REHEARING.

HINES, J. 1. In one ground of the motion for rehearing it is insisted that we overlooked section 4305 of the Civil Code, which requires that a party seeking rescission must promptly, upon discovery of the fraud, restore or offer to restore to the other whatever he has received by virtue of the contract, if it be of any value. This question was not expressly raised by demurrer to the petition, nor was it raised or discussed in the brief of counsel for the defendant. But, conceding that this point should be considered under the general ground of demurrer that the petition set forth no cause of action, we do not think that this principle was applicable in this case. The general rule is that one who seeks the rescission of a contract on the ground of fraud must restore or offer to restore the consideration received thereunder, as a condition precedent to bringing the action. *Williams* v. *Fouché*, 157 *Ga.* 227 (121 S. E. 217);

*Williams* v. *Fouché,* 160 *Ga.* 801 (129 S. E. 49); Civil Code, § 4305. But to this general rule there are exceptions, based upon equitable reasons. *Coffee* v. *Newsom,* 2 *Ga.* 442 (3); *Timmerman* v. *Stanley,* 123 *Ga.* 850 (51 S. E. 760, 1 L. R. A. (N. S.) 379); *White* v. *Sikes,* 129 *Ga.* 508 (59 S. E. 228, 121 Am. St. R. 228); *Collier* v. *Collier,* 137 *Ga.* 658, 667 (74 S. E. 275, Ann. Cas. 1913A, 1110); *Wynne* v. *Fisher,* 156 *Ga.* 656 (119 S. E. 605); *Williams* v. *Fouché,* supra; *Fletcher* v. *Fletcher,* 158 *Ga.* 899 (124 S. E. 722); *Southern Railway Co.* v. *Williams,* 160 *Ga.* 541 (5) (128 S. E. 681). In this case the defendant did not have legal title to the land for a part of the purchase-money of which the notes sued upon were given, but held the same under an executory contract of purchase. The plaintiff paid to the vendor in said executory contract of sale the balance due him by the defendant on the purchase-money of this land; and the defendant procured his vendor to make a deed directly to the plaintiff, and took from the plaintiff notes for the balance of the purchase-money due by the plaintiff to him, secured by a mortgage on this land. In these circumstances the plaintiff would be entitled to a lien on the land for the amount of the purchase-money paid by him to the vendor of the defendant under such contract of sale, and should not be required to convey or offer to convey to the defendant in this case said land until said amount had been paid back to him. In these circumstances a court of equity can adjust by the final decree in the case the rights and equities of the respective parties, and, in case of rescission, should require the parties to give effect to the respective rights and equities of each other. By the final decree in the case the plaintiff, if he succeeds in rescinding the contract between him and the defendant, can be required to convey to the defendant this land. Under the facts of this case we do not think that the plaintiff should have conveyed or offered to convey to the defendant this land until he had been reimbursed for the amount of money paid by him to the vendor of the defendant.

2. It is insisted that we overlooked the basic fact in this case that the agent was not only the agent of the plaintiff who seeks to repudiate the contract, but was also the agent of the party who does not seek such repudiation. A casual reading of the opinion in this case will show that this contention is not well founded. The decision may be wrong in that it may announce an incorrect prin-

ciple of law; but it can not be contended that we overlooked this fact in reaching the conclusion announced. But if we did not overlook this fact but reached a wrong conclusion and announced an incorrect principle of law, we should retract and correct the erroneous conclusion reached by us. With the view of determining whether we erred in our opinion, we have again carefully considered the question involved. It is insisted by counsel for the defendant that we quoted Mechem on Agency, as authority for the conclusion reached by us; and that we overlooked the following principle announced by this author: "But the most difficult question is this: —If my agent enters your employment without your knowledge and without any negligence on your part, may I repudiate? To permit me to do so, it is obvious, is to permit me to take advantage, against a perfectly innocent party, of the misconduct of my own agent. The rule is often stated broadly enough to cover this case also, though it is not so easy to see upon what grounds it is based. The practical foundation of the rule in this case, if it applies, must doubtless be found by approaching the matter from the standpoint of the other party, namely, in the conviction that not even an innocent third party, who is also the principal of the same agent, may be allowed voluntarily to retain benefits or advantages which came to him only through the act of his agent and as the result of that same agent's perfidy to his other principal." 2 Mechem on Agency (2d ed.) 1716, § 2139. In the first place it will be noted that Mechem does not undertake to state that, in the circumstances stated, innocent principals can not repudiate the contract. The author then states the practical foundation of the rule, if it exists, and states that it "must doubtless be found by approaching the matter from the standpoint of the other party, namely, in the conviction that not even an innocent third party, who is also the principal of the same agent, may be allowed voluntarily to retain benefits or advantages which came to him only through the act of his agent and as the result of that same agent's perfidy to his other principal." In the opinion in this case we held that either of the innocent principals could repudiate the contract, and rested our decision upon the foundation suggested by Mechem in the above quotation from his work on agency. The reason for the rule which we announce is, that a principal can not retain benefits and advantages secured by him through the act of his agent, and as the result of that same

agent's perfidy to his other principal. The fraud of the dual agent is the fraud of his principal; and such principal can not retain the fruits of such fraud. It follows that the principle announced in section 4537 of the Civil Code, that, when one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury must bear the loss, is not applicable in this case, for the reason that the principals are not innocent parties, but are each chargeable with the fraud perpetrated by the common agent.

For the reasons stated above, the motion for rehearing is denied.