## 34771. BRYANT et al. v. RANDALL et al. 34772. RANDALL v. BRYANT et al.

BOWLES, Justice.

Goble W. Bryant and Philip F. Florence brought suit in the Superior Court of DeKalb County against Charles M. Randall, Silvey Bearden and Jack W. Ellis, by which

they sought to enjoin the foreclosure of a deed to secure debt, cancellation of the original deed to secure debt and the assignment thereof; damages, both general and punitive; and attorney fees. The complaint was later amended to amplify the claim. Ellis was never served with process. The complaint against Bearden was dismissed.

The case against Randall was tried by the court without a jury, and although the underlying facts are somewhat complicated, most of the essential facts were stipulated by the parties for the purposes of trial. Briefly, the trial court was authorized to find that on June 13, 1969, Silvey Bearden owned 45 acres of land in Forsyth County, Georgia, which she sold to Jack W. Ellis. To secure payment of the balance of the purchase price, Ellis delivered to Bearden his deed to secure debt and promissory note, payable in installments, the last of which was due on June 8, 1974. On June 20, 1969, Ellis sold a one-third undivided interest in the land to plaintiffs Bryant and Florence so that the three of them became tenants in common. On September 24, 1973, Ellis, Bryant and Florence conveyed the tract to First Towne Associates, Inc., subject to the indebtedness owed to Bearden, and the purchaser delivered to Ellis, Bryant and Florence three separate promissory notes and a deed to secure debt for the balance of the purchase money. Thereafter, Ellis transferred and assigned his First Towne Associates note to Fulton Exchange Bank as collateral for a personal loan.

Ellis defaulted on this loan from the Fulton Bank. To avoid foreclosure, Bryant and Florence paid the bank and took an assignment of the bank's interest in that note and deed to secure debt. When Ellis failed to repay Bryant and Florence, they advertised and sold Ellis' interest in the property under a power of sale contained in the bank's security deed, bidding in the property at the foreclosure sale in the names of these two.

On September 24, 1973, First Towne conveyed the land to Soncett Properties, Inc., which assumed and agreed to pay the indebtedness owed to Bearden, as first mortgagee, as well as the indebtedness owed to Ellis, Bryant and Florence, as the second mortgagees. Soncett took bare legal title to the land as nominee for the benefit

of the Forsyth-Shiloh Four Hundred Group, an unincorporated group of investors, commonly called a land syndication, comprised of eleven investors or co-tenants, one of whom was the defendant Randall. It was Soncett's and the Group's intention that title should remain vested in Soncett while actual beneficial ownership was to reside in the Group. The eleven members of the Group entered into a written contract entitled "Agreement of Cotenancy" which, among other terms, named Randall as property manager for the Group, making him responsible for handling the Group's checking account; for receiving funds from the other investors; for depositing the same in the Group's account; for using these funds to pay any indebtedness encumbering the property, including the first and second mortgages, and all taxes. Pursuant to the property management contract, Randall received rent from the land's tenant in the amount of $115 per month, or a total sum of $460 between July and October, 1976.

On September 24, 1973, the balance due on the first mortgage was $7,221.33. That same day Randall received from the other ten investors and deposited in the Group's checking account the sum of $57,000, of which $39,892.50 was paid out by check to the closing attorneys for disbursement in accordance with a settlement statement of even date. Randall disbursed the remaining funds by checks as follows: $1,700 to Jackson and Crosset for their attorney fees for handling the closing and title insurance premium; $400 to Randall for reimbursement of survey expenses; $5,400 to Teate, one of the investors, for his share of the real estate commission; $4,800 to Randall, individually, for his share of the real estate commission; and $4,800 to one Gordon Jackson for his share of the real estate commission. According to the settlement statement pertaining to the conveyance of the land from First Towne to Soncett, a real estate commission totaling $18,000 was to be paid to Atlanta Properties and to Soncett Properties, one-half to each. The $4,800 real estate commission payment to Randall was in partial satisfaction of the $9,000 owed to Atlanta Properties under the settlement statement. On October 30, 1973, after the foregoing disbursements were made the Group's checking account

was reduced to $7.50.

In connection with the conveyance of the land from First Towne to Soncett, the latter delivered to Randall a promissory note in the amount of $3,000, which note when added to the $5,400 check to Teate and the two $4,800 checks to Randall and Jackson, respectively, equalled the total real estate commission paid in the transaction.

On May 13, 1974, Randall drew a check on the account of Randall Investment Properties (his trade name) in the amount of $7,566.61 and caused the same to be delivered to Bearden. This check was delivered to Bearden by Teate, who was acting at Randall's request. Teate caused Bearden to execute a transfer and assignment of Ellis' deed to secure debt to Randall. The promissory note in connection with that first mortgage was also delivered to Teate by Bearden but was not endorsed. Both documents were delivered by Teate to Randall. The transfer and assignment from Bearden to Randall was not recorded until December 2, 1976.

Each investor's pro rata share of the first mortgage payment owed to Bearden was calculated and determined by the court to be the total sum of $7,566.61. Randall's individual part of that obligation came to $378.33. On June 13, 1974, the sum of $7,240.84 was deposited to Randall's account and the source of this deposit was check No. 10 drawn on the Group's account by Randall and made payable to himself. On June 8, 1974 the sum of $7,188.28 was deposited in the Group's account and the source of these funds was the Group's investors, with the exception of Randall. The $7,566.61, minus Randall's payment of $378.33, equals $7,188.28. Randall drew check No. 10 payable to himself in the amount of $7,240.84 from the Group's account, which he deposited into his Randall Investment Properties account.

On July 13, 1974, the sum of $8,240.96 was deposited in the Group account and these funds came from the various Group members. Funds from the Group account were used to make the July, 1974 payment on the second mortgage originally held by Ellis, Bryant and Florence. Randall drew three separate checks to these individuals totaling $6,690.24. The July, 1976 installment on the second mortgage has not been paid, though Randall

received a letter from Bryant setting forth the amounts of the payments due to him and Florence on July 9, 1976. County taxes for 1975 and 1976 have not been paid.

On or about February 2, 1977, Randall initiated foreclosure proceedings under the power of sale contained in the deed to secure debt which he obtained from Bearden. Randall, as property manager and agent for the group knew that the Group was obligated under the agreement of cotenancy to pay the first and second mortgages on the land and pay all taxes levied on the land. As a member of the Group, Randall was aware that the Group might decide to terminate their syndication and abandon their interest in the land.

The court found as a matter of fact that the funds used by Randall to pay Bearden were reimbursed to him. Randall is an experienced real estate agent and broker. After the assignment of the security deed from Bearden, Randall did not inform any other members of the Group of what had been done. Additionally, he appropriated the rent from the property to his own use.

Upon completion of the evidence the trial court initially entered an order on May 30, 1978, and filed on June 15, 1978, declaring the transfer of the deed to secure debt from Bearden to Randall to be null and void, and the same to have been fully paid and satisfied by operation of law. Randall was required to deliver the same for cancellation of record. The subsequent sale of the land under the power contained in that deed to secure debt was declared to be null and void and Randall was ordered to refund to plaintiffs the sum of money paid to him as a result of their purchase of the land at the foreclosure sale. The plaintiffs were initially awarded damages in the amount of $460 being the amount of rent collected by Randall from the land's tenant; $2,313.83, being the amount of unpaid and past due taxes on the land; $2,000 attorney fees and costs. On June 30, 1978, during the same term of the court, the trial court vacated that order in its entirety. On July 18, 1978, the trial judge entered a second order granting practically the same relief as the first order which was filed that same day and to which defendant Randall filed a motion for new trial or in the alternative a motion to

amend and make additional findings of fact. On November 24, 1978, defendant's motion was considered and a motion to amend and make additional findings of fact was granted in part. However, the order entered with respect thereto makes little substantial change in the original order. The conclusions of law and judgment entered on July 18, 1978, were adopted as the final judgment of the court. That order was filed on November 30, 1978. On December 27, 1978, the trial judge, sua sponte, entered "Amendment to Order" in which he said that certain items which the court had orally ruled on but not included in the written order of November 24, 1978, should have been included in order to properly complete the record in the case. Due to that inadvertence the order of November 24, entered November 30, 1978, was amended to set aside and void the award to plaintiffs of damages based on the rental income, the taxes and attorney fees, the amendment reciting the same were not supported by the facts in evidence and applicable principles of law.

Bryant and Florence appeal to this court assigning four errors. Randall cross appeals, contending that the evidence does not support the judgment and that the trial court erred in overruling his motion for a new trial.

(1) We only need to consider the cross appeal. The record is devoid of any conspiracy to defraud appellants. Whatever claims the other members of the Forsyth-Shiloh Four Hundred Group may have against Randall, none exist on the record here in favor of appellants. The cases relied on by the trial court *Larkins v. Boyd,* 205 Ga. 69 (52 SE2d 307) (1949); *Brown v. Brown,* 209 Ga. 620 (3) (75 SE2d 13) (1953); *Franco v. Stein Steel &c. Co.,* 227 Ga. 92 (179 SE2d 88) (1971); *Napier v. Adams,* 166 Ga. 403 (143 SE 566) (1928); and *Spratlin, Harrington & Thomas, Inc. v. Hawn,* 116 Ga. App. 175 (156 SE2d 402) (1967) are clearly distinguishable. They deal basically with the duty owed by an agent to his principal. No such relationship exists here as Randall was not an agent of appellants and owed to them no corresponding duty.

The "Agreement of Cotenancy" or "Property

Management Agreement" was for the benefit of the members of the investment group. Although appellants may have incidentally benefited if all the contract terms had been faithfully performed, they cannot be identified as contract beneficiaries under the contract's clear terms. *Backus v. Chilivis,* 236 Ga. 500 (224 SE2d 370) (1976); *Miree v. United States of America,* 242 Ga. 126 (249 SE2d 573) (1978). The $7,188.28 ($7,566.16 less Randall's part $378.33) payments made by the Group and perhaps improperly distributed by Randall were at most for the benefit of Bearden, not appellants. If the suit is considered an action based on negligence or bad faith appellants cannot recover as there was no proof of any invasion of any primary right of appellants, nor any breach of any particular legal duty of defendant to appellants.

A cause of action is some particular right of the plaintiff against the defendant, together with some definite violation of that right which occasions damage, whether the right arises by contract or tort. *Ellison v. Ga. R. Co.,* 87 Ga. 691 (13 SE 809) (1891); *City of Columbus v. Anglin,* 120 Ga. 785 (4) (48 SE 318) (1904). It may also be defined from the standpoint of duties, provided the complainant has proven a duty owed by the defendant to him, and a breach of that duty shown which results in loss to the complainant. *Ellison v. Ga. R. Co.,* supra. There can be no right of action until there has been a wrong, that is, a violation of a legal right or breach of a legal duty, which right of action is given by the adjective or remedial law. To give a right of action there must be a right given by substantive law in the plaintiff and some invasion of that right by the defendant. *Stafford v. Maddox,* 87 Ga. 537, 540 (13 SE 559) (1891).

Applying these basic principles to the facts of this case, we find no right in appellants which has been violated by the defendant, nor do we find any duty owing by the defendant to the appellants which has been breached. No matter how reprehensible the conduct of the defendant may appear as respects his activities in handling the financial affairs of his co-investors, none of these activities affected any right of the appellants, nor has any duty of the defendant to the appellants been illustrated.

Confronted with this we conclude that the appellants proved no cause of action against the defendant Randall on which relief could be granted and a judgment entered in appellants' behalf, based on this proof must be reversed. The trial court having erred in refusing to grant the appellee's motion for a new trial as raised in the cross appeal, it is not necessary to reach appellants' contentions of error in their main appeal.

*Judgment reversed on the cross appeal; main appeal dismissed. All the Justices concur, except Jordan, J., who concurs in the judgment only, and Hall and Hill, JJ., who dissent.*

SUBMITTED APRIL 6, 1979 — DECIDED OCTOBER 30, 1979 — REHEARING DENIED NOVEMBER 21, 1979.

*Michael N. Mantegna, Leon Boling,* for Bryant et al.
*Louis F. McDonald,* for Randall et al.

HILL, Justice, dissenting.

I am concerned that the majority opinion will destroy the secondary security deed market in this state. Specifically, the majority find that plaintiffs had no cause of action against Randall. I disagree.

To me the pertinent facts are as follows: Silvey Bearden sold the property to Jack Ellis and received a security deed (the "first security deed"). Ellis sold a two-thirds interest in the property to the plaintiffs. The property was then sold to First Towne Associates which gave the plaintiffs and Ellis another security deed (the "second security deed"). Plaintiffs later acquired Ellis' one-third interest in the second security deed. First Towne sold the property in effect to a land syndication (an investment group) managed by defendant Randall. The purchaser assumed and agreed to pay the first and second security deeds.

Randall, using his own funds which would later be reimbursed by the investment group, acquired (but did not "pay off") the first security deed by assignment from Silvey Bearden. The first security deed not being paid,

Randall used it to foreclose on the property.

In my opinion the trial judge correctly held that the payment by Randall to Bearden paid and satisfied the first security deed by operation of law and that the subsequent sale of the property under the power contained in the first security deed was null and void. If that is not the law, then no second security deed is secure.

In my view, Randall, as one of the partners in the investment group, owed a duty to the plaintiffs to pay the first and second security deeds, not to acquire the first security deed and use it to defeat the rights of the holders of the second security deed. The majority rule otherwise and I therefore dissent.

I am authorized to state that Justice Hall joins in this dissent.

ON MOTION FOR REHEARING.

*Motion for rehearing denied. All the Justices concur, except Nichols, C.J., Hall and Hill, JJ., who dissent.*

HILL, Justice, dissenting.

In *Walker v. Neil,* 117 Ga. 733 (45 SE 387) (1903), the plaintiff's father purchased a lot and house and assumed two mortgages; he gave the property to the plaintiff before his death but did not give her a deed; his executor paid the two mortgages and had them assigned to himself as executor; the executor sold the property to Mrs. Walker. The plaintiff sued the executor and the purchaser to obtain a deed to the property, to clear the title and to cancel the executor's deed. The jury found in favor of the plaintiff and this court affirmed, holding that "Where money due on a mortgage is paid by one whose duty it is, by contract or otherwise, to pay the mortgage, it is a release, though in form it purports to be an assignment."

"A security deed, although conveying the legal title, does so for the purpose of security only, and, upon the satisfaction of the obligation which it is given to secure, is automatically extinguished in effect and can be cancelled of record . . ." *Sapp v. ABC Credit &c. Co.,* 243 Ga. 151, 154 (253 SE2d 82) (1979).

"A petition, seeking cancellation of a security deed

and injunction against a sale under power contained therein, alleging that the indebtedness has been paid in full, and that the petitioner is the holder of a junior security deed, is, as against general demurrer, sufficient to set forth a cause of action for the relief prayed for." *Davis v. Horner Lumber Co.*, 211 Ga. 144 (1) (84 SE2d 59) (1954).

The majority say that plaintiffs have no cause of action against Randall. In my view, the foregoing cases hold to the contrary.